## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 92-CA-00152-SCT

*WILLIAM C. MOHUNDRO AND MARY MOHUNDRO*

*v.*

*ALCORN COUNTY, MISSISSIPPI; CARL LAMAR FIELDS, TRAVIS L. LITTLE, ELY BARBER MITCHELL, WILLARD H. CRUM, AND DANNY WAYNE DIXON, INDIVIDUALLY, AND IN THEIR OFFICIAL CAPACITIES AS THE BOARD OF SUPERVISORS OF ALCORN COUNTY, MISSISSIPPI; FIDELITY AND DEPOSIT COMPANY OF MARYLAND; AND UNITED STATES FIDELITY AND GUARANTY COMPANY*

### ON PETITION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 1/29/92 |
| TRIAL JUDGE: | HON. BARRY WAYNE FORD |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JON A. WILSON |
| | TYALOR D. BUNTIN, III |
| ATTORNEY FOR APPELLEES: | WENDELL H. TRAPP, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 6/6/96 |
| MOTION FOR REHEARING FILED: | 10/25/95 |
| MANDATE ISSUED: | 6/13/96 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

¶1. The court denies the Petitions for Rehearing filed by the Appellants, William C. Mohundro and Mary Mohundro, and the Appellee, Danny Wayne Dixon. The original opinions are withdrawn and these opinions substituted therefor.

¶2. This is a sovereign immunity case coming to us from the Circuit Court of Alcorn County, Mississippi, Honorable Barry Wayne Ford presiding. William C. Mohundro ("Mohundro"), a resident of McNairy County, Tennessee, sustained a broken neck and was rendered a quadriplegic as a result of driving his

truck into a washout in the middle of Mathis Road in Alcorn County, Mississippi, on the morning of May 21, 1990. Subsequently, a lawsuit was filed by Mohundro and his wife Mary against Alcorn County, the Alcorn County Board of Supervisors, both individually and in their official capacities, and the supervisors' corporate sureties. On January 29, 1992, summary judgment was entered against the Mohundros on the basis of sovereign immunity. Feeling aggrieved, William C. and Mary Mohundro perfected this appeal, raising the following issues:

> **1. DID THE TRIAL COURT ERR IN SUSTAINING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OVERRULING THE PLAINTIFFS' COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT?**
>
> **2. IS ALCORN COUNTY, MISSISSIPPI, AS A POLITICAL ENTITY, ENTITLED TO ABSOLUTE IMMUNITY UNDER THE FACTS OF THIS CASE?**
>
> **3. ARE THE INDIVIDUAL MEMBERS OF THE ALCORN COUNTY, MISSISSIPPI, BOARD OF SUPERVISORS, AND THEIR CORPORATE SURETIES, ENTITLED TO QUALIFIED IMMUNITY UNDER THE FACTS OF THIS CASE?**

## STATEMENT OF FACTS

¶3. Mathis Road is a county road which runs more or less in a north-south direction. The section where the accident occurred is located in the Fifth District of Alcorn County, Mississippi. Approximately one month prior to Mohundro's accident, Danny Wayne Dixon, ("Dixon"), the supervisor for the Fifth District, replaced an existing bridge on Mathis Road with a culvert which was placed under and perpendicular to the road. Dixon had determined the existing bridge was rotting and needed to be replaced. He decided that a culvert would be less expensive than replacing the bridge. Dixon determined the size of culvert needed and supervised the installation by a crew of county workers.

¶4. On Sunday, May 20, 1990, sometime between 10:00 a.m. and 12:30 p.m. the entire roadbed, dirt and blacktop, surrounding the culvert washed away leaving an open pit in Mathis Road. The pit was approximately 16 to 20 feet by 24 to 30 feet in size, and approximately 6 to 8 feet deep. Dixon personally observed the washout sometime between noon and 1:00 p.m. on Sunday, May 20, 1990. Kenneth Null, a county employee, had already placed yellow warning signs in both lanes about 200 to 300 feet both north and south of the washout. The warning signs were yellow diagonal squares reading "Road Closed." One of the signs north of the washout was nailed to a saw horse while the other was nailed to a cross tie. The signs were not lighted and no barricades were put up.

¶5. Heavy rains continued through Sunday and the next day. Dixon, worried that someone might drive into the washout, made several trips to the scene, but took no preventive action other than the warning signs. Dixon stated that he intended to barricade the road with dirt and gravel on Monday if it had stopped raining. On Monday, May 21, 1990, at approximately 5:45 a.m. Dixon returned to the washout and observed the warning signs to still be in place and visible. Sometime between 5:45 a.m. and 6:00 a.m. Dixon left the scene and went to pick up Kenneth Null. Dixon stated that it started raining so hard and became so windy that he could not get out of his truck. He waited for it to subside before picking up Null sometime between 6:30 a.m. and 7:00 a.m. Dixon and Null returned to the washout between 7:00 a.m. and 7:15 a.m. and found Mohundro had run off into the open pit.

¶6. Mohundro had been traveling in the southbound lane when he saw a dark patch in the road that he believed simply to be standing water. It was instead the washout. He did not observe any warning signs. Dixon stated that when he and Null arrived to find Mohundro, the sign north of the pit in the northbound land was still standing. The sign which had been attached to the saw horse and placed in the southbound lane had been knocked or blown down and looked to have been run over by a vehicle.

¶7. Mohundro "suffered a broken neck, painful and permanent physical injuries and impairment, including the loss of use of both legs, and loss of use of both hands, thereby requiring hospitalization, expensive and prolonged medical treatment, and other resulting damages."

## DISCUSSION[1]

### DID THE TRIAL COURT ERR IN SUSTAINING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OVERRULING THE PLAINTIFFS' COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT?

### A. ALCORN COUNTY, MISSISSIPPI, AND ITS BOARD OF SUPERVISORS

### 1. IS MISS. CODE ANN. §11-46-6, *ET SEQ.* UNCONSTITUTIONAL?

¶8. The Mohundros attack the constitutionality of Miss. Code Ann. §11-46-6, *et seq.* (Supp. 1989) as being violative of Article I, Section I and Article III, Section 24 of the Mississippi constitution and the 14th Amendment to the United States Constitution. The cause of action and subsequent dismissal in the case *sub judice* was post-*Pruett v. City of Rosedale,* 421 So.2d 1046 (Miss. 1982), in which this Court abolished judicially-created sovereign immunity, and pre-*Presley v. Mississippi State Hwy. Com'n,* 608 So.2d 1288 (Miss. 1992), wherein this Court held the principle of sovereign immunity as codified in Miss. Code Ann. § 11-46-1 *et seq.* to be unconstitutional.

¶9. *Presley* was decided after the briefs were filed in this case. In that case we held Miss. Code Ann. §11-46-6, which required courts to apply pre-*Pruett* case law in determining sovereign immunity cases, to be unconstitutionally void as against the doctrine of separation of powers and the constitutional prohibition of reviving laws by reference. 608 So.2d at 1296. **See** Miss. Const. Art. 1, § 1. This holding of unconstitutionality has been consistently followed in subsequent cases. **See** *Lee County Board of Supervisors v. Fortune,* 611 So.2d 927 (Miss. 1992); *Churchill v. Pearl River Basin Development District,* 619 So.2d 900 (Miss. 1993); *Rector v. Mississippi State Highway Com'n,* 623 So.2d 975 (Miss. 1993); *Coplin v. Francis,* 631 So.2d 752 (Miss. 1994). Although this Court in *Presley* held Miss. Code Ann. §11-46-1 *et seq.* was unconstitutional, the decision in that case has only prospective application. See *Robinson v. Stewart,* 655 So.2d 866, 868 (Miss. 1995).

¶10. The Mohundros also argue that Miss. Code Ann. §11-46-1 *et seq.* is in violation of Miss. Const., Art. III, §24, which provides the courts shall be open and a remedy shall be available for every injury. In *Presley,* this Court did not address §11-46-1 *et seq.* as it relates to the Remedy Clause.

¶11. In *Wells v. Panola County Bd. of Educ.,* 645 So.2d 883 (Miss. 1994), this Court held that statutory limits on damages in suits against the State and its political subdivisions were not unconstitutional. The *Wells* Court stated that since the plaintiff had no right to recovery against government entities at common law due to sovereign immunity, "damage limitation statutes deprive the party of no remedy or

property right." 645 So.2d at 891. The Court also held the "'remedy' guaranteed is not absolute or limitless." However, this decision focused on the limitation of damages and not the absolute bar of sovereign immunity.

¶12. In *Grimes v. Pearl River Valley Water Supply Dist.,* 930 F.2d 441 (5th Cir. 1991), the United States Court of Appeals for the Fifth Circuit held that the post-*Pruett* legislative enactments of Miss. Code Ann. §11-46-6 survived Remedy Clause scrutiny. The *Grimes* Court held:

> The statute is not in conflict with the constitutional provision. The Mississippi Constitution places no limitation on the Mississippi Legislature's ability to enact legislation. The *Pruett* opinion suggested the proper forum to address complaints regarding immunity of the sovereign is the legislature. *Pruett,* 421 So.2d at 1051. The basic principle of sovereign immunity is that the "king can do no wrong". Consequently, the state is free from any liabilities unless it carves an exception. These exceptions come in the form of tort claims acts. The Mississippi Legislature has carved no such exception for this type of suit against the Pearl River Water District, and the "remedy clause" of the Mississippi Constitution does not require them to do so. Consequently, plaintiff's claims under the Mississippi Constitution must fail.

930 F.2d at 443-444.

¶13. In the recent case of *Robinson, supra,* wherein we discussed both *Wells* and *Grimes,* we held the remedy clause is not an absolute guarantee of a trial and that it is the legislature's decision whether or not to address restrictions upon actions against government entities. *Robinson,* 655 So.2d at 868-9.

¶14. The Mohundros also suggest that the statute violates their right to due process. A due process violation requires that the party be deprived of a protected property interest. *Tucker v. Hinds County,* 558 So.2d 869, 873 (Miss. 1990). As was stated by this Court in *Wells,* there was no right to sue the State or its political subdivisions at common law. The legislature has continued to withhold such a right, therefore there is no property right to sue the State. Without such a property interest there can be no due process violation. **See** *Robinson,* 655 So.2d at 869 . In *Grimes* the Fifth Circuit held the statute did not violate the due process clause of the Fourteenth Amendment of the United Stated Constitution.

### 2. IS SOVEREIGN IMMUNITY INAPPLICABLE WHERE THE GOVERNMENTAL AUTHORITY CREATED THE HAZARD WHICH CAUSED PLAINTIFF'S INJURIES?

¶15. The Mohundros also argue that even if sovereign immunity is constitutional this Court should make the exception that where a governmental entity creates the hazardous condition which causes injury to the plaintiff it can not claim sovereign immunity. As authority, the Mohundros cite *Bailey Drainage District v. Stark,* 526 So.2d 678 (Fla. 1988), in which that court explained the "created danger" doctrine as follows:

> [o]nce a governmental entity creates a known dangerous condition which may not be readily apparent to one who could be injured by the condition, and the governmental entity has knowledge of the presence of people likely to be injured, then the governmental entity must take steps to avert the danger or warn persons who may be injured by that danger.
>
> * * *

We hold, however, and in response to the certified question, sovereign immunity does not bar an

action against a governmental entity for rendering an intersection dangerous by reason of obstruction to visibility if the danger is hidden or presents a trap and governmental entity has knowledge of the danger but fails to warn motorists.

*Bailey,* 526 So.2d at 680-81, **quoting in part,** *City of St. Petersburg v. Collom,* 419 So.2d 1082, 1085 (Fla. 1982). The Mohundros also cite *Hoover v. Courington,* 557 So.2d 923 (Fla. Dist. Ct. App. 1990), where that Court applied the same theory and reversed summary judgment.

¶16. This issue was brought before this Court and *Bailey* was cited in *Fortune,* 611 So.2d at 930. The Court declined to address the issue however, since the case was being remanded to the trial court for further proceeding in light of the holding in *Presley*.

**¶17.** Pre-*Pruett* law is to be applied in this case and we refuse to carve out another exception to judicially created-sovereign immunity at this late date. Any new exception would apply only to those limited cases before us in which pre-*Pruett* law would still apply. We refuse to now create a new rule with such limited scope.

## B. THE BOARD OF SUPERVISORS

¶18. The Mohundros assert that Dixon and the other supervisors, in their individual capacities, are not entitled to qualified immunity under the facts of this case. Generally, supervisors have been found to be immune from liability for injuries resulting from the negligent maintenance of public roads. *Coplin v. Francis,* 631 So.2d 752, 753 (Miss. 1994); *Webb v. County of Lincoln,* 536 So.2d 1356, 1358-1360 (Miss. 1988). However, this qualified immunity only affords protection against suits arising out of the performance of discretionary duties. *Coplin,* 631 So.2d at 753; *Davis v. Little,* 362 So.2d 642, 644 (Miss. 1978). A supervisor or other public official

> has no immunity to a civil action for damages if his breach of a legal duty cause injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort.

*Grantham v. Mississippi Dept. of Corrections,* 522 So.2d 219, 225 (Miss. 1988). A duty is ministerial in nature when

> the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion....

*Coplin,* 631 So.2d at 754, **quoting** *Poyner v. Gilmore,* 171 Miss. 859, 865, 158 So. 922, 923 (1935); *See also, T.M. v. Noblitt,* 650 So.2d 1340, 1342 (Miss. 1995).

¶19. Miss. Code Ann. §65-21-1 (1972) sets out the following requirements for the placement of culverts: "All culverts hereafter built, rebuilt, or placed in any public road in this state shall be not less than the full width of the crown of the roadway, and shall have guide or warning posts on either side." In the case at bar Dixon stated in his deposition that the culvert in question extended beyond the roadbed by approximately 12 feet on both sides. There was no evidence concerning the placement of guide or warning posts.

¶20. In *Coplin* this Court opined:

> We now resolve the questions regarding the applicability of ministerial/discretionary function dichotomy to the construction of bridges left unanswered in *Fortune*. Boards of supervisors are vested with full jurisdiction over the roads, bridges and ferries in their respective counties. Miss. Code Ann. § 19-3-41 (1972). We long have maintained that a county has no liability except as authorized by state. *Leflore County v. Big Sand Drainage District,* 383 So.2d 501 (Miss. 1980). In *Webb v. County of Lincoln,* 536 So.2d 1356, 1359 (Miss. 1988) and *State for the Use and Benefit of Brazeale v. Lewis,* 498 So.2d 321, 323 (Miss. 1986), we recognized that Miss. Code Ann. § 19-13-51[2] partially abrogates the immunity of boards of supervisors in their capacity as"overseers" of a county's roads and bridges. However, in *Lewis,* we noted that the statute does in fact, reinforce the discretionary-ministerial distinction by allowing the board as a whole the authority to make discretionary decisions with regard to the general condition and state of maintenance of county roads and bridges, thus leaving intact the board's qualified immunity for such decisions.

> *Id.* at 323. In finding that road maintenance and repair are discretionary rather than ministerial functions, we stated in *Lewis*:

> Assuming arguendo that an individual member of the board of supervisors has a ministerial duty or function to maintain the roads of his district, we recognize that, for various reasons, at least some roads may be in a state of disrepair from time to time, particularly due to lack of funds, which would, of course, require that the main, heavily-traveled roads receive the supervisor's immediate attention. Certainly, making the determination as to which roads should be the better maintained under such conditions would be a discretionary matter with the individual member of the board, absent some personal tort committed by him.

> In *Lewis* the plaintiff alleged that her injuries were caused by "numerous holes, indentations, and rough spots along the road which culminated in creating a hazardous condition." *Id.* at 321-322, and in *Webb* we relied on *Lewis* to find that the repair of a fallen stop sign, which the plaintiffs alleged caused the one-car accident in which they were injured, was also a discretionary function.

*Coplin,* 631 at 754-55.

¶21. The minimum requirements of the construction of culverts is specified in Miss. Code Ann. §65-21-1 leaving no room for discretion in meeting the minimum standards set out there. There is no evidence that these standards were not met; therefore, there was no breach of a ministerial duty on the part of the board as a whole, Dixon or any of the other individual supervisors.

¶22. The law is not clear as to whether an individual supervisor has a ministerial duty or function to see to the repair and maintenance of the roads and bridges within his district or whether that duty is only one of the Board of Supervisors as a whole. In *Coplin,* we found that the supervisor in that case did have a such a duty and we reversed summary judgment. The decision to replace the existing bridge on Mathis road with a culvert was a discretionary function, but there may be a genuine issue of material fact regarding whether Dixon substantially exceeded his authority in making that decision. He made the decision on his own without consulting the rest of the board or a professional engineer to see if a culvert would be sufficient. **See** *Coplin,* 631 So.2d at 755.

¶23. Miss. Code Ann. §19-3-41 (1972) vests the board of supervisors of a county with full jurisdiction of roads, bridges and ferries. Dixon knew of the washout in Mathis Road on Sunday morning and was admittedly worried that someone might drive into it. Even though he was cognizant of the dangerous condition, by the time Mohundro drove off into the pit Monday morning, Dixon still had made no effort to warn the public other than to post unilluminated signs. Although whether to erect a barricade or some other type of warning device is dependent upon the public official's judgment and discretion, if it may be shown that Dixon acted with such gross neglect or callous indifference to the safety of Mohundro and the public as a whole such that his conduct may be fairly described as constructively intentional, he is not entitled to immunity. *See McFadden v. State,* 542 So.2d 871, 881 (Miss. 1989).

¶24. The Mohundros give no authority nor can we find any to support their argument that the supervisors in their individual capacities breached a ministerial duty by allowing Dixon to make decisions concerning the repair and maintenance of county roads on his own.

## C. THE BONDING COMPANIES

¶25. The bonding companies were made parties to this law suit as sureties of the members of the board of supervisors. In *Lewis,* 498 So.2d at 324, the Court held that since the supervisor, as the principal, had qualified immunity and was therefore not liable in that action, no liability could be imputed to his surety since "no liability may be imputed to its surety beyond that of its principal." **See also,** 74 Am. Jur.2d **Suretyship** §24-25 (1974); *First Mobile Home Corp. v. Little,* 298 So.2d 676 (Miss. 1974); *Irving v. Bankers' Mortg. Co.,* 169 Miss. 890, 151 So. 740 (1934).

## CONCLUSION

¶26. Alcorn County and its Board of Supervisors have sovereign immunity in this case. There is a genuine issue of material fact as to whether Dixon exceeded his authority in this case or was so grossly negligent that his action may be described as constructively intentional. If so, he has no immunity. The bonding companies may only be liable to the extent of their principals. For the foregoing reasons, this case is affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.

**¶27. AFFIRMED IN PART; REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, P.J., PITTMAN, SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. LEE, C.J., NOT PARTICIPATING.**

**BANKS, JUSTICE, DISSENTING:**

**¶28.** I do not agree that the fact that the new exception to judicially created sovereign immunity would be short lived is a sufficient justification for rejecting that exception. I would accept the reasoning of the *Bailey* Court and remand this matter for further proceedings under that rule. *Bailey Drainage District v. Stark*,

526 So. 2d 678 (Fla. 1988).

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶29. The majority's determination to give *Presley v. Mississippi State Hwy Comm'n*, 608 So. 2d 1288 (Miss. 1992) prospective application effectively precludes relief to William Mohundro under a provision of law ruled unconstitutional three years prior to his accident. Judicially created rules of law are generally given retroactive effect. *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 534 (1991); *Solem v. Stumes*, 465 U.S. 638, 641-42 (1984); *Hall v. Hilbun,* 466 So. 2d 856, 876 (Miss. 1985). In an attempt to avoid any uncertainty among the various state and political subdivisions as to whether they would be immune from suit, this Court deviated from the general rule of retroactivity only to create greater confusion. Moreover, the effect of applying *Presley* prospectively is absurd. We declared Miss. Code Ann. § 11-46-6 unconstitutional three years ago, yet we continue to deny litigants relief under this same section. Our ruling in *Presley* has continued to stifle the development of the law in much the same way as Miss. Code Ann. § 11-46-6. It makes little sense to continue to deny litigants relief under a statute which is undeniably unconstitutional. Accordingly, I dissent.

1. Although the Mohundros set out three separate issues at the beginning of their brief the first issue encompasses the second and third. Therefore, this opinion is written as discussing one issue with several subparts.

2. Miss. Code Ann. § 13-13-51 (1972) gives boards of supervisors the discretion to pay certain claims for injuries to property sustained as the result of defective bridges, causeways and culverts.