# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-IA-01112-SCT

*MISSISSIPPI TRANSPORTATION COMMISSION*

*v.*

*SYLVIA MONTGOMERY*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/2010 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAY GORE, III |
| | ROGER ADAM KIRK |
| ATTORNEYS FOR APPELLEE: | ROBERT GEORGE CLARK, III |
| | BRYANT WANDRICK CLARK |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 02/23/2012 |
| MOTION FOR REHEARING FILED: | 10/20/2011 |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing filed by the Mississippi Transportation Commission is denied. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2.     Sylvia Montgomery filed suit against the Mississippi Transportation Commission (Commission) in the Circuit Court of Yazoo County after she was injured when her car struck a pothole in the northbound lane of Interstate 55 near Vaughan. The Commission filed a motion for summary judgment, claiming it was exempt from liability under several

provisions of the Mississippi Torts Claim Act (MTCA). *See* Miss. Code Ann. § 11-46-9(1) (Rev. 2002). The Circuit Court of Yazoo County, Judge Jannie M. Lewis presiding, denied the Commission's motion. A three-justice panel of this Court granted the Commission's petition for interlocutory appeal.

¶3. Upon review of the parties' briefs and the record, we find the trial court erred by not determining whether the duty to warn of a dangerous condition on the highway is a discretionary duty under the public-function test. Accordingly, we reverse the trial court's denial of the Commission's motion for summary judgment and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶4. Since this is an appeal from the trial court's denial of the Commission's motion for summary judgment, we state the facts here in the light most favorable to Montgomery, the nonmoving party. On February 24, 2003, at approximately 10:30 p.m., Montgomery was driving northbound on I-55 when her car hit a twelve-by-fifteen-foot hole in the highway. Because it was late at night and the bridge was not illuminated, Montgomery was unable to see the hole. The hole was located just north of the exit ramp at Exit 133 (Vaughan), but just south of the Vaughan Bridge, which crosses over Vaughan Road. Injured and nearly losing control of her car, Montgomery pulled over to the shoulder of the highway, as did several other cars.

¶5. At the time of the accident, the portion of I-55 located in the area of the Vaughan Bridge was supervised and maintained by Dickerson & Bowen ("D&B"), a private contractor hired by the Commission. Under the contract between D&B and the Commission, D&B was

2

responsible for repairing any damage to the highway, and according to the contractual terms, to "take every precaution against injury or damage by action of the elements or from any other cause."

**Twelve Days Before The Accident: February 12, 2003**

¶6.     Problems had been noted with the same area of the highway before Montgomery had her accident.  On February 12, 2003, during an inspection of I-55, a pothole was discovered in the northbound lane at the Vaughan Bridge.  This was detailed in a "project diary"[1] maintained by the Mississippi Department of Transportation (MDOT).  The entry on that day states:

> NOTE #1: INSPECTED JOB SITE @ I-55.  POTHOLE REPAIR NEEDED @ VAUGHAN BRIDGE IN N. BOUND LANE.  CONTRACTOR WAS ADVISED.

The Commission alleges the pothole was repaired by D&B two days later, but the project diary for February 14, 2003, merely states:

> NOTE: ALL NECESSARY REPAIRS WERE MAKE [sic] BY CONTRACTOR.

D&B has no records of any work performed that day.

¶7.     Montgomery argues that the pothole depicted in the project diary report for February 14, 2003, was the same hole she struck, after it had worsened over time – growing from a ten-by-ten-foot hole to a twelve-by-fifteen-foot hole.  Montgomery argues in the alternative that, at least by February 23, 2003 (the day before the accident), the Commission had notice

---

[1] A project diary is used to record the work done to a road, where the work was done, by whom the work was performed, what equipment was used, and the weather conditions at the time the work was performed.

of the existence of the hole she struck. The Commission, on the other hand, argues that Montgomery struck a different – and new – hole. In other words, the Commission asserts that the hole recorded in the project diary reports for February 12, 2003, and February 14, 2003, was *not* the same hole which Montgomery struck on February 24, 2003.

**The Day Before the Accident: February 23, 2003**

¶8.     On February 23, 2003, the day before Montgomery's accident, the Commission was notified of the existence of a hole in the northbound lane at the Vaughan Bridge on I-55. The Commission alleges that repairs were made to the hole that same day. However, the project diary report for February 23, 2003, states that "NO WORK" was done. The project diary report for the next day, February 24, 2003, the day of Montgomery's accident, also states "NO WORK" but goes on to state:

> 1. INSPECTED JOB SITE, REPAIRS @ VAUGHAN  BRIDGE NORTH BOUND WERE MADE THE PREVIOUS NIGHT WERE OK.
> 2. GUARD RAIL DAMAGED @ 137 MILE MARKER IN NORTH BOUND LANE ON LEFT SHOULDER.

Corry Harms, the Commission's project engineer, claims that the "NO WORK" project diary report for February 23, 2003, was probably an error. However, Harms was not present to witness the repairs the Commission claims were done the night before Montgomery's accident. In fact, Harms was not sure what repairs allegedly were done on February 23, 2003, nor does he know the specific location on I-55 where the alleged repairs were made.

¶9.     The Commission has not brought forward any witnesses to testify to the repairs that allegedly were done on February 13 or February 23, 2003. No evidence in the record shows

4

that the Commission made any effort to warn the public about the holes from either February

13 or February 23, 2003.

**One Day After the Accident: February 25, 2003**

¶10.    The day after Montgomery's accident, D&B was contacted to repair a hole in the area

of the Vaughan Bridge.  The project diary report for February 25, 2003, states:

> D&B- CONTRACTOR AGAIN CALLED TO REPAIR POTHOLE @
> VAUGHAN BRIDGE @ 12:30AM FEB. 24, 2003
> CONTRACTOR ARRIVED @ 7:00AM PROPER LANE CLOSURE WAS
> PLACED @ WORK AREA  & NECESSARY REPAIRS WERE MADE.
> P.E. (CORRY HARMS) - ON JOB SITE [sic] FROM 8:20 TO 8:45
>
> NOTE #1: DAMAGED AREA REMOVED (12'X 15' DEPTH) &
> REPLACED WITH HOT MIX

The project diary report for February 26, 2003, reveals that the Commission was again

notified of a pothole in the northbound lane at the south end of the Vaughan Bridge.  By

February 27, 2003, D&B decided simply to dig out the entire area of the highway and replace

it with hot-mix asphalt, a project which took four days.  The project diary report reflecting

this work stated:

> D&B REPAIRED DAMAGED AREA ON JOB SITE ALSO REMOVED
> LANE CLOSURE IN NORTH BOUND LANE. CONTRACTOR NOTIFIED
> THAT DAMAGED AREAS ARE TO BE DUG OUT & REPLACED WITH
> HOT MIX ASPHALT.  REPAIRED AREAS ARE ALSO TO BE
> MONITORED.

¶11.    Montgomery ultimately brought suit against the Commission and D&B.  Montgomery

initially alleged five theories[2] of liability:

---

[2]Before this Court, Montgomery argues that the Commission is liable under
Mississippi Code Section 11-46-9(1)(v) (Rev. 2002) (dangerous-condition/failure-to-warn).

5

<table>
<tr><td>a.</td><td>Failure to properly repair interstate;</td></tr>
<tr><td>b.</td><td>Failure to use proper precautions in road construction;</td></tr>
<tr><td>c.</td><td>Failure to maintain the proper degree of control of its employees;</td></tr>
<tr><td>d.</td><td>Failure to use proper precautions in responding to hazardous conditions; and</td></tr>
<tr><td>e.</td><td>Failure to give motorist warning of the hazardous condition.</td></tr>
</table>

After Montgomery had engaged in discovery with both defendants, the Commission filed a counterclaim against D&B, which was quickly dismissed with prejudice by the trial court. Soon after, the trial court ordered mediation between the parties. Eventually, Montgomery settled with D&B, and the trial court dismissed D&B from the suit with prejudice.

¶12. On August 3, 2009, the trial court held a hearing on the Commission's motion for summary judgment. The Commission primarily argued that the duty to maintain the roadways was discretionary, which is a general exemption from liability under Mississippi Code Section 11-46-9(1)(d) (Rev. 2002). At the conclusion of the hearing, Judge Lewis rendered an opinion from the bench. The entirety of her opinion stated:

> Okay. Thank you. Before this Court is a Motion for Summary Judgment filed by the defendant. In a Motion for Summary Judgment, the Court must find, before a summary judgment can be granted, the Court must find that there is no genuine issue as to any material fact or law. The -- after hearing arguments of both counsel, the Court finds that there is a conflict in the facts as to when the hazardous condition existed and as to when the defendant received notice of that condition.
>
> Therefore, the Court finds that there is a genuine issue as to the facts in this case, and the Motion for Summary Judgment is denied. *Prepare me an order*.

(Emphasis added.) Obviously, a delay occurred in preparing and submitting an order to Judge Lewis memorializing her bench ruling, because the order was not submitted to Judge Lewis for execution and entry until June 23, 2010. The order denying summary judgment was signed that day and entered on June 24, 2010.

6

¶13. From the trial court's denial of summary judgment, the Commission now appeals to this Court.

## DISCUSSION

¶14. When reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the trial court's judgment. *Patterson v. Tibbs*, 60 So. 3d 742, 753 (Miss. 2011) (citing *Chisolm v. Miss. Dep't of Transp.*, 942 So. 2d 136, 140 (Miss. 2006)). In doing so, we are required to examine all the pleadings, depositions, answers to interrogatories and affidavits. *Id.* (citing *Chisolm*, 942 So. 2d at 140). *See also Webb v. Braswell*, 930 So. 2d 387, 395 (Miss. 2006). The focus of this review is to determine if issues of material fact exist when the evidence is viewed in the light most favorable to the nonmoving party. *Patterson*, 60 So. 3d at 753 (citing *Chisolm*, 942 So. 2d at 140). *See also Hataway v. Nicholls*, 893 So. 2d 1054, 1057 (Miss. 2005).

¶15. Generally, Mississippi and its governmental entities are afforded sovereign immunity from civil suits, under the theory that "the king can do no wrong." *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 90 (Miss. 2010) (quoting *Mohundro v. Alcorn County*, 675 So. 2d 848, 852 (Miss. 1996)). *See also Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 443 (5th Cir. 1991)). Thus, the State can be held liable only if it carves out an exception. *Howe*, 49 So. 3d at 90. These exceptions are drafted in the form of tort claims acts. *Id.*

¶16. Since late 1993, the Legislature has waived immunity for torts committed by the State of Mississippi and its employees who are acting within the scope of their employment. Miss. Code Ann. § 11-46-5 (Rev. 2002). However, this waiver is tempered by a large number of

7

exceptions, by which a governmental entity can be exempt from liability on claims based on specified circumstances. Miss. Code Ann. § 11-46-9 (Rev. 2002).

¶17. In today's case, the Commission has alleged five theories in support of its argument that it should be exempt from liability under the MTCA, namely those exemptions set out in Section 11-46-9(1), subsections (d), (g), (p), (q), and (v). In the end, we find that the only argument meriting discussion involves Section 11-46-9(1)(d), the discretionary-function exemption.

**WHETHER THE COMMISSION IS EXEMPT FROM LIABILITY UNDER MISSISSIPPI CODE SECTION 11-46-9(1)(d) FOR FAILING TO WARN OF AN ALLEGEDLY DANGEROUS CONDITION.**

¶18. Section 11-46-9(1)(d) provides immunity from claims "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]" Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2002). We have held that, if the governmental employee indeed is performing a discretionary function, then the governmental entity is immune, regardless of whether the employee has abused his discretion. ***Collins v. Tallahatchie County***, 876 So. 2d 284, 289 (Miss. 2004).

¶19. The method of determining whether an act is discretionary or ministerial has been clearly established. *See **Dancy v. East Miss. State Hosp.**,* 944 So. 2d 10, 16-17 (Miss. 2006). A duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the government entity or its employee. *See **Miss. Dep't of Mental Health v. Hall**,* 936 So. 2d 917, 924-25 (Miss. 2006). A duty is ministerial if it is positively imposed by law and required to be performed at a specific time and place, removing an officer's or entity's

8

choice or judgment. ***Covington County Sch. Dist. v. Magee***, 29 So. 3d 1, 5 (Miss. 2010) (quoting ***L.W. v. McComb Separate Mun. Sch. Dist.***, 754 So. 2d 1136, 1141 (Miss. 1999)).

¶20.    This Court has adopted a two-part public-function test to determine if "governmental conduct is discretionary so as to afford the governmental entity immunity." ***Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256, 260 (Miss. 1999) (citing ***U.S. v. Gaubert***, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)).  This Court first must ascertain whether the activity in question involved an element of choice or judgment. ***Id.*** If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations. ***Id.***

¶21.    The Commission argues that it is immune under Section 11-46-9(1)(d) because Mississippi Code Section 65-1-65 (Rev. 2005)[3] imposes a statutory duty upon the highway department to maintain all state highways. Specifically, the statute directs the state highway department to maintain the highways "to afford convenient, comfortable, and economic use thereof by the public." Also, Section 65-1-65 directs the highway department to "organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the

---

[3]Mississippi Code Section 65-1-65 (Rev. 2005) states,

It shall be the duty of the state highway commission to have the state highway department maintain all highways which have been or which may be hereafter taken over by the state highway department for maintenance in such a way as to afford convenient, comfortable, and economic use thereof by the public at all times. To this end it shall be the duty of the director, subject to the rules, regulations and orders of the commission as spread on its minutes, to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained highway system, so that said highway may be kept under proper maintenance and repair at all times.

9

state-maintained highway system . . . ." Citing *Mohundro*, 675 So. 2d at 853-54, the Commission contends that "any decision regarding maintenance of the highways, including the subject intersection, [is] discretionary as they are based on the judgment of MDOT officials and employees."

¶22.    In arguing that the Commission is immune under Section 11-46-9(1)(d), the Commission also implicitly relies on Mississippi Code Section 63-3-305, which reads:

> Local authorities in their respective jurisdictions *shall place and maintain* such traffic control devices upon highways under their jurisdiction *as they may deem necessary* to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic . . . .
> Local authorities in exercising those functions referred to in the preceding paragraph shall be subject to the direction and control of the state highway commission.

Miss. Code Ann. § 63-3-305 (Rev. 2004) (emphasis added).  The term "official traffic-control devices" is defined as "all signs, signals, markings, and devices not inconsistent with this chapter placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic."  Miss. Code Ann. § 63-3-133 (Rev. 2004); *see also Knight v. Miss. Transp. Comm'n*, 10 So. 3d 962, 970 (Miss. Ct. App. 2009) (noting that Mississippi Code Section 65-1-65 does "not impose any specific directives 'as to the time, manner, and conditions for carrying out' the MTC's duty in maintaining highways or posting traffic-control or warning devices").

¶23.    On the other hand, Montgomery does not argue in her brief whether the Commission is exempt from liability under Section 11-46-9(1)(d), the discretionary-function exemption. Instead, Montgomery presents the issue as concerning solely whether the Commission

10

waived its immunity because of its failure to warn of a dangerous condition under Section 11-46-9(1)(v).

¶24.     We note, however, in response to the Commission's argument concerning the applicability of Section 11-46-9(1)(d), Montgomery makes an alternative argument that, even assuming, *arguendo*, that the Commission is correct in its assertion that the inspection and maintenance of I-55 is a discretionary function, the Commission still was required to exercise ordinary care. In support of this alternative argument, Montgomery cites ***Brewer v. Burdette***, 768 So. 2d 920, 923 (Miss. 2000), for the proposition that immunity for discretionary duties is granted only when ordinary care is used. However, this is no longer the law. *See **Collins***, 876 So. 2d 284, 289 (Miss. 2004) (holding that the principle that one must use ordinary care in performing a discretionary function was an erroneous proposition and stressing that the ordinary-care standard is not applicable to Mississippi Code Section 11-46-9(1)(d)); *see also* ***Barrentine v. Miss. Dep't of Transp.***, 913 So. 2d 391, 394 (Miss. Ct. App. 2005) (recognizing that "the Mississippi Supreme Court has overruled the line of cases holding that the placement of traffic control devices should be analyzed within the context of ordinary care" – namely ***Miss. Dep't of Transp. v. Cargile***, 847 So. 2d 258, 268 (Miss. 2003) (citing ***Brewer***, 768 So. 2d at 923; ***L.W.***, 754 So. 2d at 1142).

¶25.     Notwithstanding this Court's acknowledgment in ***Collins*** that ***Brewer*** was decided on the erroneous premise that a governmental entity could retain immunity only if it exercised ordinary care in the performance of a discretionary function, today's case reveals a belief that the erroneous premise set out in ***Brewer*** is still good law. In ***L.W.***, this Court discussed an apparent interplay between Section 11-46-9(1)(b) and Section 11-46-9(1)(d) in a combined

discussion of the exercise of ordinary care under subsection (b) and the exercise of a discretionary function under subsection (d). *L.W.*, 754 So. 2d at 1140-43. This Court decided *Brewer* roughly thirteen months after *L.W.*, and we decided *Cargile* less than three years after *Brewer*. In *Cargile*, this Court stated:

> [I]mmunity for discretionary duties is granted only when ordinary care is used. *See Brewer v. Burdette*, 768 So. 2d 920, 923 (Miss. 2000); *L.W.*, 754 So. 2d at 1142. The government actor's use of ordinary care is a question for the finder of fact. *Brewer*, 768 So. 2d at 923; *L.W.*, 754 So. 2d at 1142.

> In *Brewer* we held that road maintenance and repair are discretionary acts. *Id.* (citing *Mohundro*, 675 So. 2d at 854). Using all of the relevant facts, the trial court is charged with deciding whether the decision maker used ordinary care. *Id.* at 923 (citing *L.W.*, 754 So. 2d at 1141).

*Cargile*, 847 So. 2d at 268-69.

¶26.    Today, we state that, to the extent *L.W.*, *Brewer*, and *Cargile* may be read to condone an interplay between Section 11-46-9(1)(b) and Section 11-46-9(1)(d) to determine whether the discretionary conduct of the governmental entity is exempt from liability by applying the ordinary-care standard, these cases, and any other cases which stand for this proposition, are expressly overruled. We clarify that, in determining whether a governmental entity is exempt from liability under Section 11-46-9(1)(d), the two-part public-function test already mentioned and further discussed *infra* must be used. *Jones*, 744 So. 2d at 260 (citing *U.S. v. Gaubert,* 499 U.S. at 322).

12

¶27.   In today's case, Montgomery relies solely on Section 11-46-9(1)(v)[4] as the basis for asserting that the Commission is not exempt from liability under the MTCA. The Commission relies, *inter alia*, on Section 11-46-9(1)(d) as the basis for asserting that it is exempt from liability under the MTCA. However, we need not reach Montgomery's argument under Section 11-46-9(1)(v) if we find that the alleged act or omission was discretionary under Section 11-46-9(1)(d).[5] *See Collins*, 876 So. 2d at 289.

¶28.   The Commission ultimately contends that "[a]ny decision" related to the maintenance or repair of the highway is discretionary under Section 11-46-9(1)(d). Alternatively, the Commission argues that the failure to warn through the use of traffic signals also is discretionary under Section 11-46-9(1)(d).

¶29.   In *Jones*, this Court noted the interplay among maintenance, dangerous conditions, and warning of these dangerous conditions:

> [T]he decision to build a road and the initial placement of traffic control devices is of the planning nature, involving public policy considerations. *Bailey Drainage Dist. v. Stark*, 526 So. 2d 678, 681 n.1 (Fla. 1988). However,

---

[4]Section 11-46-9(1)(v) provides that a governmental entity shall not be liable for any claim:

> Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care.

Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2002).

[5]Interestingly, Montgomery concedes in her brief "that MDOT's duty to regularly inspect and maintain I-55 is discretionary."

> once the road is built and the responsible entity becomes aware of a dangerous condition in connection with the road, **the duty becomes one of maintenance**.

*Jones*, 744 So. 2d at 264 (emphasis added). In the next sentence, this Court reasoned that, when a dangerous condition arose, "MDOT and Tunica County were required to use due care in the exercise of their discretion." *Id.* The Court then examined the alleged facts and found that "MDOT and Tunica [had] negligently failed to warn of the danger created by the reopening of Irwin Place Road." *Id.* We reiterate that this Court has since held that discretionary duties under Section 11-46-9(1)(d) do not require ordinary care and that discretionary functions are protected despite an abuse of this discretion. *Collins*, 876 So. 2d at 289.

¶30. Accordingly, if this Court finds that the decision of whether to warn of a dangerous condition on a highway is discretionary, the Commission is exempt from liability under Section 11-46-9(1)(d). We thus apply the two-part public-function test. *Jones*, 744 So. 2d at 260 (citing *U.S. v. Gaubert*, 499 U.S. at 322).

### I. Choice or Judgment

¶31. Ordinarily, where a statute mandates the government or its employees to act, all acts fulfilling that duty are considered mandated as well, and neither the government nor its employees enjoys immunity. Occasionally, however, the Legislature will mandate that a political subdivision fulfill some particular function, but then specifically set forth that some portion or aspect of that function is discretionary. When that happens, acts fulfilling the discretionary portion of the governmental function enjoy immunity.

14

¶32. Here, Section 65-1-65 imposes a statutory duty on the highway department to maintain all state highways. *See* Miss. Code Ann. 65-1-65 (Rev. 2005). Were this the only statutory provision at issue, we would find that the Commission is not immune for the acts carrying out that function. The Legislature, however, carved out a portion of the function mandated by that statute, and made it discretionary. Section 63-3-305 gives local authorities discretion in placing and maintaining traffic devices "as they may deem necessary to indicate and carry out the provisions of this chapter . . . ." Miss. Code Ann. § 63-3-305 (Rev. 2004). Although the Commission's duty to maintain highways is not discretionary, the placing of warning signs is, because the Legislature has provided specific language in the statute extending discretion to those acts. Otherwise, the Commission would not enjoy immunity.

¶33. Further, this Court and the Court of Appeals previously have held that, under Section 63-3-305, the placement or nonplacement of traffic-control devices to warn of dangerous conditions involves choice and judgment and is not ministerial. *See Jones*, 744 So. 2d at 262-63; *Barrentine*, 913 So. 2d at 393 (failure to place warning signs on bridge discretionary); *Knight*, 10 So. 3d at 970 (placement of highway warning signs discretionary); *Willing v. Estate of Benz*, 958 So. 2d 1240, 1255 (Miss. Ct. App. 2007) (method of warning of icy patch on highway discretionary). Because the Legislature extended discretion to whether and how to warn traffic, we find that the Commission's decision was not ministerial.

## II. Social, Economic, or Political Policy

¶34. The second prong of the public-function test limits the scope of discretionary-function immunity to "only those functions which by nature are policy decisions, whether made at the operational or planning level." *Dancy*, 944 So. 2d at 16 (other citations omitted). "The

15

purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (other citations omitted). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

¶35.    In *Jones*, this Court found that, if MDOT had notice of the dangerous condition, it could be liable for failure to warn of a dangerous condition about which it had knowledge, despite this Court's finding that the duty to place traffic signals at intersections was a discretionary function. *Jones*, 744 So. 2d at 262-63. However, as noted earlier, after *Collins*, we no longer apply a standard of ordinary care to discretionary functions; rather, if the duty is discretionary under the public-function test, then Section 11-46-9(1)(d) provides immunity. *Collins*, 876 So. 2d at 298.

¶36.    We also note that immunity applies, regardless of whether the defendant fails to perform the discretionary duty under Section 11-46-9(1)(d):

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . .
> (d) Based upon the exercise or performance or **the failure to exercise or perform a discretionary function or duty** on the part of a governmental entity or employee thereof, whether or not the discretion be abused . . . .

Miss. Code Ann. § 11-46-9(1)(d) (emphasis added).

¶37.    In *Jones*, this Court reasoned as much when plaintiffs sued MDOT for failing to place traffic signs at a "T" intersection. *Jones*, 744 So. 2d at 263.    MDOT argued that the

16

placement of traffic signs was a discretionary function, and this Court agreed. *Id.* The plaintiffs, however, continued by arguing that MDOT was not entitled to immunity, because it had "failed to consider whether traffic control devices were necessary on the road." *Id.* This Court found that MDOT was still immune under Section 11-46-9(1)(d), because it "exempts from the waiver of immunity not only the performance of those acts which are discretionary, but also the 'failure to exercise or perform a discretionary function or duty.'" *Id.* (other citations omitted). This Court reasoned that, although MDOT had failed to perform this discretionary function (the placement of traffic-control devices), MDOT was still immune because it had failed to perform a **discretionary function** – the placement of traffic signs at intersections for purposes of warning the public. *Id.*

¶38.    As such, the allegations that the Commission was aware of a dangerous condition and allegedly failed to warn of this condition do not waive the Commission's immunity under Section 11-46-9(1)(d) – assuming the duty to warn of a pothole is a discretionary duty.[6]

¶39.    To withstand entry of summary judgment, Montgomery – under the public-function test – had to rebut the presumption that the duty to warn of a pothole was grounded in policy considerations. *See Dancy*, 944 So. 2d at 18 (quoting *Gaubert*, 499 U.S. at 324) (When "established governmental policy, as expressed or implied by statute, regulation, or agency

---

[6]In *Jones*, under the public-function test, this Court reasoned that the initial placement of warning signs at the planning stage involved policy considerations. *Jones*, 744 So. 2d at 262-63. We note that the instant case concerns the duty to warn of a pothole on a highway. Neither party discussed with any detail the extent to which this duty – to warn of a dangerous pothole on the highway – involved social, economic, or political-policy considerations.

17

guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are *grounded in policy when exercising that discretion*.").

¶40.    Here, improperly arguing under an ordinary-care standard, Montgomery did not address whether warning of a pothole under the facts of this case involved public-policy considerations.    Montgomery did not "present **specific facts** sufficient to rebut the presumption" that warning of a dangerous pothole in the highway is based on policy considerations. ***Baldassaro v. U.S.***, 64 F.3d 206, 212 (5th Cir. 1995) ("the burden is on Baldassaro to allege facts that would support a finding that the challenged action is not the kind of conduct that can be said to be grounded in [public-policy considerations]") (emphasis added); ***ALX El Dorado, Inc. v. Southwest Sav. & Loan Ass'n***, 36 F. 3d 409, 412 (5th Cir. 1994) ("Here, the plaintiffs have alleged nothing that would suggest that the statutory discretion exercised by the banking agencies – whether or not exercised negligently – was not based on considerations of public policy.").

¶41.    Accordingly, we find that the trial court erred in denying the Commission's motion for summary judgment without first considering whether the Commission's duty to warn of the pothole was a discretionary duty under the public-function test. *See **Willing***, 958 So. 2d at 1254. If the nature of the Commission's duty to warn of this pothole indeed involves choice or judgment and is grounded in policy considerations, then the Commission is immune under Section 11-46-9(1)(d).

## CONCLUSION

¶42.    The trial court's order reveals that it denied the Commission's motion for summary judgment because issues of fact existed as to whether the Commission had notice of the

18

pothole. We find the trial court erred by failing first to consider whether the failure to warn was a discretionary function under the public-function test. Accordingly, we reverse the trial court's denial of summary judgment and remand this case to the Circuit Court of Yazoo County for proceedings consistent with this opinion. Specifically, we remand for a determination of whether the Commission's duty to warn was discretionary under Section 11-46-9(1)(d). If the trial court determines that the duty to warn of a dangerous pothole on a highway is not discretionary under the public-function test, then the trial court may consider the extent to which genuine issues of material fact exist under Section 11-46-9(1)(v).

¶43.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND KING, JJ.**

**KITCHENS, JUSTICE, DISSENTING:**

¶44.    Once a governmental entity has become aware of a dangerous condition on its property, that entity has a duty to protect and/or warn the public of the dangerous condition. Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2002). Thus, what once was a fully discretionary governmental function – i.e., the placement and use of traffic devices – no longer is entirely discretionary when a known, dangerous condition has arisen. Because today's decision holds that the failure to warn of a dangerous condition may be discretionary, and directs the trial court to determine this question of law, I respectfully dissent.

¶45.    Immunity, or the lack thereof, is a question of law, not fact. *City of Laurel v. Williams*, 21 So. 3d 1170, 1174 (Miss. 2009) (citing *Miss. Dep't of Pub. Safety v. Dunn*,

19

861 So. 2d 990, 994 (Miss. 2003)). Thus, such issues are reviewed by this Court under a *de novo* standard. *Id.* (citing *Phillips v. Miss. Dep't of Pub. Safety*, 978 So. 2d 656, 660 (Miss. 2008)). Despite this well-accepted standard of review, the majority remands this case for the trial court to determine whether "the duty to warn of a dangerous pothole" was a discretionary duty.[7] Maj. Op. ¶ 42. Given that the trial court is not directed to make additional findings of fact, this Court is fully capable, and duty bound, to decide this question of law. A three-member panel of this Court granted the Mississippi Transportation Commission's petition for interlocutory appeal, indicating that appellate review would "materially advance the termination of the litigation . . . [,] protect a party from substantial and irreparable injury[,] or resolve an issue of general importance in the administration of justice." M.R.A.P. 5(a). Today's decision accomplishes none of these purposes, because, no matter Judge Lewis's decision on the issue, the Supreme Court does not defer to trial courts on issues of law.

¶46. Today's decision marks an abrupt change in this Court's treatment of sovereign immunity cases. Just recently, in *City of Jackson v. Doe*, 68 So. 3d 1285 (Miss. 2011), this Court determined, via interlocutory appeal, that the City's failure to warn of an alleged dangerous condition in a public park was a discretionary duty as a matter of law. In *Doe*, this Court reversed the trial court's denial of summary judgment and rendered judgment in favor of the City, not hesitating to address the legal issue, despite the trial court's having given no

---

[7]Curiously, the majority answers the first prong of the public function test by holding that "the placement or nonplacement of traffic-control devices to warn of dangerous conditions involves choice and judgment and is not ministerial." Maj. Op. ¶33. There is no reason that we cannot decide the second prong.

reason for its ruling. *Id.* at 1287. While the underlying facts of that case are quite different from those in the present one, there is nothing to hinder or limit our appellate power to adjudicate the immunity question with which we are now presented.

¶47. The answer to the question posed by the majority is contained in Mississippi Code Section 11-46-9(1)(v), which provides that a governmental entity does not enjoy immunity for a failure to protect or warn against a known dangerous condition. While there can be no dispute that the government is immune for acts or omissions that arise out of discretionary duties under Section 11-46-9(1)(d), the presence of a known dangerous condition takes any associated governmental action/inaction outside the realm of discretion. Thus, the governmental entity is required to use ordinary care in protecting or warning against a known dangerous condition. Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2002). Any other reading of the Mississippi Tort Claims Act would be illogical.

¶48. As this Court explained in ***Jones v. Mississippi Department of Transportation***, 744 So. 2d 256, 264 (Miss. 1999),

> [T]he decision to build a road and the initial placement of traffic control devices is of the planning nature, involving public policy considerations. ***Bailey Drainage Dist. v. Stark***, 526 So. 2d 678, 681 n.2 (Fla. 1998). However, once the road is built and the responsible entity becomes aware of a dangerous condition in connection with the road, the duty becomes one of maintenance. ***Id.***

In other words, when the governmental entity becomes aware of a dangerous condition on its property, there is no discretion with regard to its duty to warn and protect against known hazards. Accordingly, the ***Jones*** decision should not have said, in the very next sentence, that the defendants were thus "required to use due care in the exercise of their discretion."

21

*Id.* In this respect, I agree with today's decision. Maj. Op. ¶29. I respectfully disagree, however, that the failure to warn or protect against a known dangerous condition may be discretionary or that this legal question should first be decided by the trial court. For these reasons, I would affirm the trial court's denial of summary judgment.

**CHANDLER AND KING, JJ., JOIN THIS OPINION.**