MAXWELL, J.,
concurring in part and in the result:
¶23. I fully agree with the majority that, based on Little v. Mississippi Department of Transportation, 129 So.3d 132, 138 (¶¶ 10-11) (Miss.2013), MDOT and MTC were not immunized by section 11-49-9(l)(d) from liability for the Logans’ claims of negligent maintenance and negli *273 gent creation of a dangerous condition. So I concur with the portion of the opinion that reverses the grant of summary judgment on those claims.
¶ 24. I also concur with the result the majority reached on the failure-to-warn claim — but for a different reason. I disagree with the majority’s justification for affirmance — lack of evidence. The statements by MDOT workers repeated in Mauri Logan’s affidavit were admissible as admissions by a party opponent. See M.R.E. 801(d)(2)(D). And these admissions were sufficient to create a disputed factual question whether MDOT knew about the dangerous condition on the bridge.
¶ 25. Still, I am hesitant to reverse the grant of summary judgment on this claim, given how the supreme court has distinguished a failure-to-warn claim against MDOT and MTC from a negligent-maintenance claim against these government entities. In the same opinion where the court took away discretionary-function immunity for negligent-maintenance claims, the court kept alive the availability of discretionary-function immunity for failure-to-warn claims. Mississippi Transportation Commission v. Montgomery, 80 So.3d 789, 798 (¶ 32) (Miss.2012). So with this type of claim left undisturbed by Montgomery and Little ⅛ sweeping changes, I would find, like the trial court, that MDOT and MTC enjoyed discretionary-function immunity for this claim.

Mississippi Buie of Evidence 804(d)(2)(D)

¶26. The majority finds there is no evidence MDOT knew of the dangerous condition posed by the bent metal plate. In reaching this conclusion, the majority rejects Mauri Logan’s affidavit for containing inadmissible hearsay. But under Mississippi Rule of Evidence 801(d)(2)(D), “[a] statement is not hearsay if ... [t]he statement is offered against a party and is ,. a statement by the party’s agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.” And here, via Mauri’s affidavit, the Logans offered statements made by MDOT employees that were within the scope of their employment — road maintenance.
¶27. The majority concludes these statements do not meet the criteria of Rule 801(d)(2)(D). It deems the statements inadmissible based on the rule’s qualification that “[t]he contents of the statement shall be considered but are not alone sufficient to establish ... the agency or employment relationship and scope thereof under subdivision (D).” But what the majority overlooks is that the affidavit does not merely offer the contents of these statements but also their context.
¶28. In her affidavit, Mauri does not surmise the speakers must have been MDOT employees based on what they told her. Instead, Mauri attests that she “saw” and “spoke” with two MDOT employees.' As she specifically put it, she “saw two employees of Mississippi Department of Trasnportation at the scene.” And she “spoke with one of those gentlemen who was a slightly heavyset African-American.” This MDOT employee “told [her] that MDOT had received a phone call earlier in the day of March 12, 2011, regarding the dangerous metal plates sticking up on the bridge.” Her affidavit also described her conversation with a “second employee from MDOT” who “confirmed that MDOT had received a telephone call earlier in the day regarding the dangerous metal plates on the highway.”
¶ 29. Further, though the affidavit does not describe the scope of their employment, it is certainly reasonable to conclude they were there because of the condition of the bridge work. In fact, when addressing *274 Mauri's affidavit, the circuit judge went so far as to “take judicial notice” that the only reason MDOT employees would be at the bridge that Saturday afternoon — a day the record clearly showed no MDOT employee was scheduled to work — was “because of a complaint or warning that there was a problem with the bridge.”
¶ 30. To me, the majority’s actual concern is that Mauri’s affidavit testimony is unverified. But any skepticism over whether Mauri really did talk with MDOT employees goes tó the weight and credibility of her testimony — issues simply not on the table at the summary-judgment stage. For purposes of summary judgment, this court, like the trial court, is to view the evidence in the light most favorable to the Logans, the nonmovants. See Leslie v. City of Biloxi, 758 So.2d 430, 431-32 (¶ 5) (Miss.2002) (citations omitted).
¶ 31. My concern is that the majority, by declaring the affidavit inadmissible, is reading Rule 801(d)(2)(D) too narrowly. And by doing so, the majority constricts the discretion given to trial judges when making evidentiary rulings. The judge in this case decided the affidavit was admissible for purposes of summary judgment. MDOT had asked the judge to strike Mau-ri’s affidavit, arguing it contained inadmissible hearsay. But the judge declined this request and instead considered the affidavit as part of the Logans’ evidence. Like any other evidentiary matter, this decision is left to the judge’s discretion. Indem. Ins. Co. of N. Am. v. Guidant Ins., 99 So.3d 142, 155 (¶ 36) (Miss.2012) (reviewing evidentiary decision made at summary-judgment stage for abuse of discretion). And here, based on Rule 801(d)(2)(D), I see no abuse of discretion for allowing Mauri’s affidavit to stand as support for the Logan’s defense against summary judgment.
¶ 32. Because we must view this evidence in the light most favorable to the Logans as the nonmovants, I find the Lo-gans sufficiently supported them failure-to-warn claim for purposes of defeating summary judgment.

Discretionary-Function Immunity

¶ 33. I still join the result reached by the majority based on Little ⅛ precursor, Montgomery, which distinguished the discretionary duty of placing warning signs from the nondiscretionary duty of maintaining highways. Montgomery, 80 So.3d at 798-99 (¶¶ 31-33).
¶ 34. As the majority has pointed out, Little confirmed that “Montgomery indicated a change in the law” — namely, that the duty to maintain and repair state highways is not a discretionary function. Little, 129 So.3d at 137-38 (¶¶ 9-11). Little further proclaimed that' “all acts in furtherance of that duty ... are ministerial unless, as in Montgomery, another statute makes a particular act discretionary.” Little, 129 So.3d at 138 (¶ 11) (emphasis added). In Montgomery, the supreme court determined that the duty to place warning signs had been specifically “carved out” by the Legislature from the mandatory function to maintain highways. Montgomery, 80 So.3d at 798 (¶ 32). Thus, while the “duty to maintain highways is not discretionaiy, the placing of warning signs is[.]” Id.
¶ 35. I have my misgivings whether the statute Montgomery relied upon actually represents a legislative decision to make the decision to warn about a dangerous road condition discretionary — especially where, as in this case, MDOT allegedly created the dangerous condition in the first place. See id. (applying Mississippi Code Annotated Section 63-3-305 (Rev. 2004), which “gives local authorities discretion in placing and maintaining traffic devices” (emphasis added)). But I do not *275 see how this court can get around Montgomery ’s declaration that MTC’s failure to warn about a known giant pothole was the product of legislatively conferred discretion.
¶ 36. As the the Logans’ failure-to-warn claim is based on allegations similar to those in Montgomery, I would affirm the grant of summary judgment based on discretionary-function immunity.
EOBERTS AND FAIR, JJ„ JOIN THIS OPINION. JAMES, J., JOINS THIS OPINION IN PART.