ROBERTS, J.,
for the Court:
¶ 1. After taking a final exam, Ashley Hankins was crossing Fifth Avenue on the campus of Delta State University (DSU) in the City of Cleveland, Mississippi (City), when she was struck by a vehicle driven by Carl Towles.[1] Hankins suffered multiple injuries as a result of the accident. On February 25, 2009, Hankins filed a corm plaint against the City, DSU, and Towles in the Bolivar County Circuit Court to recover for her injuries. However, on August 20, 2010, the circuit court granted the City’s and DSU’s motions for summary judgment. The circuit court certified both summary judgments as final under Mississippi Rule of Civil Procedure Rule 54(b). It is from the circuit court’s grant of summary judgment that Hankins now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. At approximately 5:00 p.m. on December 3, 2007, Hankins, a student at DSU, was walking across the Fifth Avenue crosswalk when she was hit by a vehicle driven by Towles; Hankins suffered several injuries that required medical treatment. In her complaint filed on February 25, 2009, Hankins alleges that the City and DSU were responsible for the accident because they were negligent and failed to “maintain proper roadway conditions, design, maintenance, warnings, proper safety practices, proper traffic control devices[,] and signage” at the crosswalk. Specifically, Hankins argues that the City and DSU “failed to exercise and perform their duties pursuant to Mississippi law and further committed acts of negligence per se and general acts of negligence” by not “properly construct[ing] and maintaining] a roadway in accordance with the Manual on Uniform Traffic Control Devices, Mississippi law[,] and generally accepted safety practice!.]” Hankins further alleged that they failed to “properly design, construct, maintain!,] and repair crosswalks for pedestrians such as [Hankins].” She also stated in her complaint that: they neglected “to design, install, maintain!,] and repair signage and proper warnings to motorists of the presence of pedestrians and crosswalks!,]” and they did not “install and maintain adequate lighting at a highly traveled crosswalk and areas where pedestrians are known to travel and come in contact with motor vehicles!.]”
¶ 3. In response to Hankins’s complaint, DSU filed a motion to dismiss on March 20, 2009, and its answer on April 29, 2009; the City filed its answer on March 31, 2009. Additionally on March 31, 2009, the circuit court entered its order setting the discovery deadlines in this case to be completed “on or before one-hundred and twenty (120) days after service of an answer by the applicable party.” On June 18, 2009, during the discovery process, the City filed a motion to compel Hankins to respond or admit to certain matters that, in its opinion, she had previously failed to answer adequately. In an order entered on September 10, 2009, the circuit court ordered Hankins to respond to the requests made in the City’s motion. Over a month later, on October 14, 2009, Hankins filed a motion to compel discovery against the City after receiving what she deemed to be less than compliant responses to discovery requests. The circuit court granted Hankins’s motion to compel on January 29, 2010.
*92 ¶ 4. Then, on March 19, 2010, DSU filed its motion to dismiss and motion for summary judgment. Hankins filed a motion to compel DSU on June 1, 2010. Following DSU’s lead, the City subsequently filed a motion for summary judgment on June 16, 2010. At a hearing on August 20, 2010, the circuit court granted both DSU’s and the City’s motions for summary judgment on the grounds that both were immune under the Mississippi Tort Claims Act (MTCA). On August 31, 2010, and after finding “that no just reason exists to delay appeal of this matter[,]” the circuit court filed its certification of final judgment pursuant to Mississippi Rule of Civil Procedure Rule 54(b). On that day, the circuit court’s grant of summary judgment in favor of DSU and the City became final judgments for appeal purposes.
¶ 5. Feeling aggrieved by the circuit court’s grant of summary judgment, Han-kins now appeals raising two issues, which we recite verbatim:
I. Whether the award of summary judgment in favor of Defendants [the] City and [DSU] should be reversed because there are genuine issues of material fact concerning these Defendantfs’] negligence which contributed to Plaintiffs damages and these political entities are not cloaked with absolute sovereign immunity under the limitations imposed by the [MTCA].
II. Whether the trial judge abused his discretion in denying Plaintiffs Second Motion to Compel against the [City] and [DSU] thereby [denying] [the] Plaintiff the reasonable opportunity to conduct additional discovery [that] likely would have revealed additional issues of material fact preventing summary judgment.
STANDARD OF REVIEW
¶ 6. It is well established that an appellate court’s review of a trial court’s grant of summary judgment is de novo. Stuart v. Univ. of Miss. Med. Ctr., 21 So.3d 544, 546 (¶ 5) (Miss.2009). “The trial court’s decision to grant summary judgment will be affirmed if the record before the Court shows that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law.” Id. at 547 (citations omitted). However, the proper standard of review that this Court employs when reviewing a lower court’s decision to not grant a motion to compel is abuse of discretion. Edmonds v. Williamson, 13 So.3d 1283, 1292 (¶28) (Miss.2009) (citing Elec. Data Sys. Corp. v. Miss. Div. of Medicaid, 853 So.2d 1192, 1209 (¶ 57) (Miss.2003)).
ANALYSIS
I. Summary Judgment
¶ 7. “When a motion for summary judgment is made and supported, an adverse party may not rest upon the mere allegations or denials of his pleadings. His response must set forth specific facts showing that there is a genuine issue for trial.” Barrentine v. Miss. Dep’t. of Transp., 913 So.2d 391, 393 (¶7) (Miss.Ct.App.2005). On appeal, Hankins first argues that the circuit court erred in granting DSU’s and the City’s motions for summary judgment because there were still genuine issues of material fact to be resolved. Specifically, she submits that DSU and the City are not entitled to absolute immunity under the MTCA. In its two separate orders granting DSU’s and the City’s motions for summary judgment, the circuit court held that each were entitled to immunity pursuant to the design, discretionary, and premises exemptions found in Mississippi Code Annotated section 11-46-9 (Supp.2011). We *93 will address each of these immunities separately.
A. Design Exemption
¶ 8. The circuit court found that both DSU and the City were entitled to immunity under Mississippi Code Annotated section 11 — 46—9(1)(p) which states in pertinent part:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
Arising out of a plan or design for construction or improvements to public property, including but not limited to, ... highways, roads, streets, ... where such plan or design has been approved in advance of the construction or improvement by the legislative body or governing authority of a governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval, and where such plan or design is in conformity with engineering or design standards in effect at the time of preparation of the plan or design[.]
¶ 9. For DSU and the City to receive immunity under this provision of the statute, each would have to prove the following three elements: (1) the existence of a plan or design, (2) that the plan or design was approved prior to construction, and (3) the plan or design was in conformity with the engineering standards that were in effect at the time it was prepared. MacDonald ex rel. MacDonald v. Miss. Dep’t. of Transp., 955 So.2d 355, 358 (¶ 7) (Miss.Ct.App.2006). Hankins correctly argues that neither the City nor DSU presented a plan or design for the street, much less one that was approved in advance of construction as required by statute. Although the circuit court erred in granting immunity based on this provision, such error is not dispositive of the case.
B. Discretionary Exemption
¶ 10. The next issue raised on appeal is whether the circuit court erred when it granted DSU and the City immunity under the discretionary-function exemption of Mississippi Code Annotated section 11 — 46—9(1)(d).[2] This provision protects the governmental entity from claims that are “[biased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.” Miss.Code Ann. § 11-46—9(1)(d). For a governmental entity to be granted immunity under this provision, *94 we must determine the following: “(1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic[,] or political policy alternatives.” Miss. Dep’t of Mental Health & Ellisville State Sch. v. Shaw, 45 So.3d 656, 659 (¶ 12) (Miss.2010) (quoting Bridges v. Pearl River Valley Water Supply Dist., 793 So.2d 584, 588 (¶ 15) (Miss. 2001)). A decision will be considered ministerial and not discretionary “[if] the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer’s judgment or discretion.” L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1141 (¶22) (Miss.1999) (quoting T.M. v. Noblitt, 650 So.2d 1340, 1344 (Miss.1995) (overruled on other grounds)).
¶ 11. Hankins raises several arguments under this issue. She first argues that both DSU and the City failed to provide any evidence that there was a budgetary, societal, or political policy concern in the decision to place the improper traffic warnings and the failure to maintain the crosswalk. In fact, she asserts that the evidence supports there was money available to take the proper precautions at the crosswalk, because after the accident, the crosswalk received new paint and additional lighting. Additionally, she submits that a different crosswalk only a block from the Fifth Avenue crosswalk had been updated recently; thus, there must have been money available to update the Fifth Avenue crosswalk as well. She further argues that reasonable steps to minimize risks of personal injury are still necessary to provide reasonable safety to citizens and that the “[fjailure to take any such steps where feasible is negligent and not within the discretionary[-]funetion exemption, even though the particular nature of the appropriate steps is discretionary”; thus, DSU’s and the City’s failure to update and maintain the crosswalk is not discretionary since the steps to protect the citizens would have been reasonable. Ladner v. Stone County, 938 So.2d 270, 275 (¶ 18) (Miss.Ct.App.2006) (quoting Wright v. United States, 866 F.Supp. 804, 806 (S.D.N.Y.1994)). At first blush, it appears that Hankins is arguing that the Manual Uniform Traffic Control Devices (MUTCD), which provides the requirements that must be followed in regard to which warning signs to use and the placement of those signs, creates a duty on the part of DSU and the City for the proper placement of the signs. However, a further reading shows that Hankins is asserting that both the City and DSU had an independent legal duty outside of the MUTCD requirements which makes them ineligible for immunity under this provision as making the placement of the signs ministerial and not discretionary. She argues that the City’s duty is found in Mississippi Code Annotated section 21-37-3 (Rev.2007), which imposes a duty on the City to maintain its streets. Hankins argues that DSU’s duty comes from her status as a student on DSU’s campus making her an invitee on DSU’s premises. “A landowner owes an invitee the duty to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not plain and open to view.” Cook v. Stringer, 764 So.2d 481, 483 (¶ 7) (Miss.Ct.App.2000) (quoting Am. Nat’l Ins. Co. v. Hogue, 749 So.2d 1254, 1258 (¶ 11) (Miss.Ct.App.2000)).
¶ 12. Generally, it has been found that “[t]he placement, or non-placement, of warning signs is a discretionary act, involving a choice that must be based upon public policy and other considerations.” *95 Willingham v. Miss. Transp. Comm’n, 944 So.2d 949, 958 (¶13) (Miss.Ct.App.2006). Unknowingly, Hankins provides evidence to support the circuit court’s decision that the placement of the signs and that the maintenance of the crosswalk were discretionary functions. In its brief and in response to Hankins’s argument that the funds existed to maintain the crosswalk, DSU asserts that Hankins “overlooks the fact that other improvements on campus with the limited funds available would not have been made” had DSU used the funds on the signs for the Fifth Avenue crosswalk. Hankins also submits that the maintenance of other crosswalks is evidence there were funds available to maintain the Fifth Avenue crosswalk. Just as DSU pointed out in the quoted language from its brief, the decision to maintain other crosswalks is a prime example of when the decision is based upon a policy judgment of someone and is not a statutorily imposed duty. In regard to Hankins’s assertion that the City had a statutory duty under Mississippi Code Annotated section 21-37-8, we do not read the statute to impose a duty on the City.[3] Instead, we interpret the statute only to give the City the power to exercise jurisdiction over the streets and not a mandatory duty to maintain them. Thus, we conclude that the City’s decision to maintain the crosswalk is a discretionary function.
¶ 13. Therefore, as this was a discretionary function, the circuit court was correct in granting immunity to DSU and the City pursuant to Mississippi Code Annotated section 11-6-9(1)(d). Hankins failed to provide any legitimate support that DSU and the City had a statutorily imposed duty to maintain the crosswalk. Therefore, this issue is without merit.
C. Premises Exemption
¶ 14. DSU and the City were additionally granted immunity pursuant to Mississippi Code Annotated sections 11-46-9(1)(v) and 11-46-9(1)(w). The first section provides immunity to a governmental entity for injuries that occur on the premises owned by the entity and reads as follows:
Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care[.]
Miss.Code Ann. § 11-46-9(1)(v).
¶ 15. Mississippi Code Annotated section ll-46-9(l)(w) states:
Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guardrailf,] or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice[.]
(Emphasis added). For Hankins to demonstrate that the City and DSU were not *96 entitled to immunity under Mississippi Code Annotated section 11 — 46—9(l)(v), she would have to show that the elements outlined in Howard v. City of Biloxi, 943 So.2d 751, 754 (¶ 5) (Miss.Ct.App.2006) were not met. We paraphrase the elements listed in Howard as follows:
1. An injury was suffered;
2. The injury was caused by a dangerous condition on the property caused by the negligent or other wrongful conduct of the government employee;
3. The governmental entity had either actual or constructive notice of the defect;
4. The governmental entity had an adequate opportunity to protect or warn of this defect; and
5. The condition was not open and obvious to one exercising due care.

Id.

¶ 16. Applying these elements to the case before us, it is apparent that Hankins suffered an injury. As to the remaining elements, Hankins alleges that the dangerous condition was not “crossing the road” as the circuit court found; instead, she alleged that: improper warning signs on the street did not adequately warn approaching drivers of the crosswalk; the crosswalk was poorly maintained; and inadequate lighting existed in the crosswalk area. She lastly argues that the circuit court erred in finding that the “open-and-obvious” element acted as a complete bar to her recovery.
¶ 17. We find that the circuit court was correct in granting immunity to DSU and the City under these provisions of the statute. Hankins failed to present any evidence that the City or DSU had any notice of any claimed defect or had the opportunity to protect or warn of the defect. At the summary-judgment hearing, Hankins’s attorney attempted to demonstrate notice by showing a news story filmed after the accident. In the video, DSU’s chief of police commented on the lighting conditions at the crosswalk. This evidence is not sufficient to show either the City or DSU had any actual or constructive notice of the defect prior to the accident or the opportunity to warn of the defect.
¶ 18. Although the above reasoning provides sufficient ground to support the circuit court’s decision to grant immunity to DSU and the City, we will further address Hankins’s argument on the open-and-obvious element. At her deposition, Hankins testified under oath that she had used the Fifth Avenue crosswalk daily, and on that particular day, she had stopped before entering the crosswalk and was aware that Towles’s car, with its lights on, was driving toward her. When asked if she could see the oncoming cars and their headlights, Hankins responded in the affirmative. When Hankins was also asked why she decided to walk into crosswalk with cars still moving toward it; she responded: “Because I thought he would stop.... ” Hankins further testified at her deposition that she entered the crosswalk knowing there were vehicles in close proximity moving toward her and on the assumption that the vehicles would stop before reaching the crosswalk. In fact, she never looked to see if the vehicles were actually going to stop. Crossing a busy street at dusk, even if properly lit and with adequate warning signs posted as Hankins argues, is an open-and-obvious danger that a reasonable person should undertake with caution. Hankins, relying on the language in City of Natchez v. Jackson, 941 So.2d 865, 876 (¶ 33) (Miss.Ct.App.2006), argues that the open-and-obvious nature of the dangerous condition was “not a bar to recovery when the issue is the government’s negligent maintenance or repair which led to the dangerous condition.” In *97 Howard, 943 So.2d at 756 (¶ 16), we held that “actions brought against an entity-invoking the protection of the [MTCA] differ from the general negligence action” in that the abolishment of the “open-and-obvious” defense as a complete bar to recovery in negligence actions may not apply to cases brought under the MTCA. We further held that the statute requires suits brought against entities for injuries caused by a dangerous condition requires a showing of the entity’s failure to warn. Id. As was discussed earlier in this section, Han-kins failed to provide any evidence that either the City or DSU had knowledge of the dangerous condition and failed to warn. She additionally fails to show that the open-and-obvious nature of the alleged dangerous condition, of which she was obviously aware, should not act as a complete bar to her recovery.
¶ 19. This issue is without merit.
II. Discovery
¶ 20. Lastly, Hankins argues that the circuit judge abused his discretion in denying her second motion to compel discovery. She argues that DSU and the City “manipulated” the situation by untimely producing documents she requested; thus, when she received the documents and began preparing for depositions, the period for discovery was closed.
¶ 21. It should first be noted that Hankins failed to cite to any relevant case or statute in support of her argument as required under Mississippi Rule of Appellate Procedure 28. Further, matters involving discovery are committed to the circuit judge’s discretion. Morton v. City of Shelby, 984 So.2d 323, 342 (¶46) (Miss. Ct.App.2007). In Morton, this Court stated that Tyrone Morton provided no explanation as to what new information he would have sought had he been granted the additional time or how that information would have affected whether a summary judgment was appropriate. Id. This Court held that “[h]aving failed to establish any narrowly-tailored issues to be addressed by additional discovery, Morton’s request for such amounts to nothing more than an attempt to re-open the entire discovery process.” Id.
¶ 22. Hankins’s brief does not provide, with any specificity, the information she hoped to gain had the motion to compel been granted. Nor does Hankins provide any argument as to how any new information would have helped her defeat the motions summary judgment. Procedural bar notwithstanding, the discovery completed was sufficient for the circuit court to grant immunity to DSU and the City.
¶ 23. This issue is proeedurally barred and also without merit.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, MAXWELL AND RUSSELL, JJ„ CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.

. Although Hankins filed suit again Towles, DSU, and the City, the claims against Towles are not at issue on appeal. This opinion will only address the claims against DSU and the City.

. For the purpose of determining which party was responsible for the routine maintenance of the crosswalk, we look to the City’s admission to DSU’s discovery requests that the maintenance of the Fifth Avenue crosswalk was within its power and jurisdiction and not within DSU’s. The language is quoted as follows:
Request No. 1: Please admit that the [City] conducts the periodic maintenance of 5th Avenue, including that portion of 5th Avenue that runs through the campus of [DSU]. Response: [The] City admits that Fifth Avenue is a public street in the City of Cleveland, Mississippi. With regard to that portion of Fifth Avenue lying north of Court Street and south of Sunflower Road, jurisdiction over road maintenance, including regulatory functions, was exercised by the [City], Absent approval from the City, DSU does not have authority to perform regulatory functions within the traveled right of way of that portion of Fifth Avenue lying north of Court Street and south of Sunflower Road. Except as expressly admitted, the remaining allegations of Request for Admission No. 1 are denied.
Based on this discovery response, it appears that the City was primarily responsible for the routine maintenance of Fifth Avenue and its crosswalk; DSU could maintain the area only with the City's approval.

. The language of the statute provides:
Except as otherwise provided in subsection (2) of this section, the governing authorities of municipalities shall have the power to exercise full jurisdiction in the matter of streets, sidewalks, sewers, and parks; to open and lay out and construct the same; and to repair, maintain, pave, sprinkle, adorn, and light the same.
Miss.Code Ann. § 21-37-3(1) (emphasis added).