IRVING, P.J.,
for the Court:
¶ 1. At the conclusion of a bench trial, the Adams County Circuit Court found that Andre De la Barre had sustained $80,000 in damages as a result of his fall on a sidewalk in Natchez, Mississippi. The circuit court apportioned fifty percent of the damages to De la Barre and fifty percent to the City of Natchez (City). Feeling aggrieved, the City appeals and argues that the circuit court erred by failing to find that it was immune from liability under the Mississippi Tort Claims Act (MTCA), and erred in applying the comparative-negligence doctrine instead of finding that De la Barre’s own negligence was an absolute bar to his recovery.
¶ 2. Finding that the circuit court erred in failing to find that the City is immune under the discretionary-function-exemption provision of the MTCA, we reverse and render the circuit court’s judgment.
FACTS
¶ 3. In September 2008, a hurricane hit Natchez, Mississippi, and caused a building’s brick fagade to fall. The fagade caused damage to the sidewalk in front of the building. The City claims that it immediately put barricades, warning tape, and warning barrels in the area.
¶ 4. De la Barre lived in the area where the fagade had fallen and was aware of the damage to the sidewalk. The sidewalk in that area consists of two tiers: a concrete tier immediately in front of the building, and a lower, bricked tier, between the concrete tier and the street. The bricked tier of the sidewalk is lower than the concrete tier of the sidewalk, but higher than the street level. De la Barre testified that he knew of the danger in the area and that he never tried to step up onto the concrete tier of the sidewalk, which was “clearly damaged.” When he parked on that street, he would regularly step on the lower, bricked tier of the sidewalk because there was never a visible problem with that tier. De la Barre claims that there were no barrels, warning tape, or any other warning signs indicating that the bricked portion of the sidewalk was damaged. He testified that, on March 30, 2009, when he stepped onto the bricked portion of the sidewalk, the bricks collapsed beneath him, causing him to fall and break his wrist.
¶ 5. Louise Peabody, who lived on the same street as De la Barre, testified that there were no barriers or warning signs on the bricked portion of the sidewalk around the time that De la Barre fell. She also stated that she did not recall seeing any warning devices in that area at any time before De la Barre fell. Peabody admitted that she would always walk on the bricked *731 portion of the sidewalk when she parked in that area.
¶ 6. David Gardner, the superintendent of Natchez Water Works and a city engineer, testified that the day after the hurricane, the entire side of the street where the damage had occurred was blocked off with barriers. He stated that the City inspected the damage to the sidewalk that day and several times afterwards, with the safety of pedestrians being the City’s top priority. Gardner stated that the concrete portion of the sidewalk was crushed, and that the bricked portion was crushed in several places. Officials had to rearrange warning barrels every time they visited the site of the damage. He added that the City was inspecting the area in order to send information to insurance companies so that the City could get the sidewalk repaired. Gardner testified that when the fagade fell, it made a “depression” in the bricked portion of the sidewalk. He claimed that De la Barre would be “absolutely incorrect” to say that the bricks where he stepped looked stable because there was a hole already there, and the tier was not level and was pushed inward.
¶ 7. Gardner admitted that he did not recall how many barrels were initially put out to warn citizens about the damaged area, but believed that there were sufficient warnings surrounding the concrete portion of the sidewalk. He further stated that, prior to the damage, the bricks would naturally allow water to infiltrate the cracks. The fallen fagade’s damage caused the cracks to open even more, weakening the foundation beneath the bricks. Gardner conceded that the City knew of the hazard, which is why it made “every attempt” to warn citizens and get the situation rectified.
¶ 8. In its order and final judgment, the circuit court found that, although the City was “diligent in trying to deal with the situation[,] ... the warning[s] and restriction[s] were not legally sufficient for the area in question[.]” The circuit court also found that “[although [De la Barre] was not able to see the precise danger of the specific point of the collapse, he was certainly aware or should have been aware of the general danger of the area [and] that a reasonably prudent person, having the information that [De la Barre] did, would have exercised a higher degree of care and caution in stepping [up on] the area in question[.]”
¶ 9. Additional facts, as necessary, will be related in the analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 10. The City claims that it is entitled to immunity under Mississippi Code Annotated section 11-46—9(1)(d) (Rev.2012) because “the selection and placement of warning devices is a discretionary function involving choice and judgment grounded upon social, economic!,] and political policy considerations.” De la Barre argues that the issue is not whether the City was negligent in warning of the dangerous condition, but whether the City was negligent for failing to inspect and maintain its sidewalks.
¶ 11. “The MTCA is the exclusive remedy for filing a lawsuit against governmental entities and [their] employees.” S. Cent. Reg’l Med. Ctr. v. Guffy, 980 So.2d 1252, 1255 (¶ 7) (Miss.2006) (quoting City of Jackson v. Brister, 888 So.2d 274, 278 (¶ 13) (Miss.2003)). Therefore, a proper resolution of the issue presented requires an application of the relevant portions of the MTCA to the facts of the case. In making this application, an appellate court applies a de novo standard of review. Brister, 838 So.2d at 278 (¶ 13).
*732 ¶ 12. The Mississippi Supreme Court has established that “a duty is discretionary when it is not imposed by law and depends upon the judgment or choice of the government entity or its employee.” Miss. Transp. Comm’n v. Montgomery, 80 So.3d 789, 795 (¶ 19) (Miss.2012) (citing Miss. Dep’t of Mental Health v. Hall, 936 So.2d 917, 924-25 (¶ 17) (Miss.2006)). “A duty is ministerial if it is positively imposed by law and required to be performed at a specific time and place, removing an officer’s or entity’s choice or judgment.” Id. (citing Covington Cnty. Sch. Dist. v. Magee, 29 So.3d 1, 5 (¶ 8) (Miss.2010)). “[Wjhere a statute mandates the government or its employees to act, all acts fulfilling that duty are considered mandated as well, and neither the government nor its employees enjoys immunity.” Id. at 798 (¶ 31). Therefore, even if an act fulfilling a ministerial duty involves choice or judgment, the duty itself is still ministerial, as are the acts fulfilling that duty. Little v. Miss. Dep’t of Tramp., 129 So.3d 132, 136 (¶ 8) (Miss. 2013).
¶ 13. Mississippi Code Annotated section 21-37-3 (Rev.2007), upon which De la Barre relies, provides that “the governing authorities of municipalities shall have the power to exercise full jurisdiction in the matter of streets, sidewalks, sewers, and parks; to open and lay out and construct the same; and to repair, maintain, pave, sprinkle, adorn, and light the same.” We have interpreted section 21-37-3 as not imposing a duty on a city to repair its streets and sidewalks. Hankins v. City of Cleveland,, 90 So.3d 88, 95 (¶ 12) (Miss.Ct.App.2011). “Instead, we [have] interpreted] [section 21-37-3] [as] only [giving] the City the power to exercise jurisdiction over the streets[,] and not [imposing] a ... duty to maintain them.” Id. Because there is no statute imposing a duty upon the City to repair and maintain sidewalks, the duty is a discretionary one.
¶ 14. Section 11 — 46—9(l)(d) provides:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
[[Image here]]
Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]
Accordingly, regardless of whether the issue is the placement of warning signs or the failure to inspect and maintain the sidewalk, the City is immune from De la Barre’s claim pursuant to section 11-46-9(l)(d). Having determined that the City is immune, we need not address the City’s remaining assertion that De la Barre’s negligence should be an absolute bar from recovery, as this issue is now moot.
¶ 15. THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.