# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00258-COA

| | |
|---|---|
| **TERRY H. LOGAN, SR. AND BEVERLY W. LOGAN** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **MISSISSIPPI DEPARTMENT OF TRANSPORTATION AND MISSISSIPPI TRANSPORTATION COMMISSION** | **APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 09/19/2012 |
| TRIAL JUDGE: | HON. JAMES MCCLURE III |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | CHARLES JONES SWAYZE III CHARLES J. SWAYZE JR. |
| ATTORNEY FOR APPELLEES: | ROBERT J. DAMBRINO III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | GRANTED THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART: 09/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     Terry and Beverly Logan filed a negligence claim against the Mississippi Department of Transportation (MDOT) and the Mississippi Transportation Commission (MTC) after the Logans' car hit a metal plate protruding upwards from the road on Highway 49 in Tallahatchie County, causing a single-car accident and injuries to the Logans.  The Tallahatchie County Circuit Court granted a motion for summary judgment filed by the

MDOT and the MTC (the Appellees), and the Logans now appeal. Finding that the Appellees were not immune from liability for the failure to maintain the bridge in a safe manner, we reverse the circuit court's grant of summary judgment in part and remand for a determination of whether the repair of the bridge was performed in a negligent manner. As to the Logans' other claim regarding the failure to warn of the "dangerous condition," we find that summary judgment is appropriate as there is no genuine issue of material fact that the Appellees had notice that a dangerous condition existed on the bridge/road.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 12, 2011, the Logans were returning home from a trip to Memphis, Tennessee when they were involved in a single-car accident on Highway 49 South in Tallahatchie County. As the Logans were crossing a bridge, the undercarriage of their vehicle became caught on a large metal plate bolted to the road, which was protruding upward.[1] The metal plate cut the bottom of the Logans' car from the front axle to the rear

---

[1] The metal plates were placed in the bridge decking by MDOT as part of a scheduled repair to the bridge. According to the MDOT's bridge supervisor, Charles McMinn, the bridge repair consisted of driving new pylons to replace the rotten wood pylons that were currently in place. In order to effectuate this repair, a twelve-by-twelve inch (12" x 12") hole is drilled into the deck of the bridge, and an "H-beam" is placed into the hole and driven down into the ground beneath the bridge. Then, two metal plates, which are welded together on top of one another, are secured in the hole by a three-quarter (3/4") inch bolt, affixing the plates to twenty-four-by-twenty-four-inch (24" x 24") plywood underneath the bridge decking. According to McMinn, this "holds the pylon under there." Concrete is poured to fill the hole after the plate is affixed. Mitch Turner, an engineer for the MDOT, attested that the "steel plates are installed in their original state transverse to the direction of travel on the bridge" and "are installed flat to the surface of the bridge deck." McMinn noted that it is preferable to make sure the bottom plate is wider or the same size as the top plate and that the plates are not ever positioned in a cross shape.

axle, which caused Terry to lose control over the vehicle and crash. The couple's daughter-in-law, Mauri Logan, arrived at the scene post-accident; she claimed that two MDOT employees at the scene informed her that MDOT had been notified earlier in the day of the metal plate sticking up from the road. The Logans suffered physical injuries as a result of the accident.[2]

¶3.     On August 4, 2011, the Logans filed a complaint against the Appellees, alleging that they were negligent (1) by failing to maintain the bridge in a safe manner; (2) by allowing a "defective and dangerous condition" to exist; and (3) by failing to warn of the dangerous condition and negligent bridge repair. The Logans asserted that as a result of the Appellees' negligence, they suffered damages, including pain and suffering; medical expenses; mental anguish and emotional distress, loss of consortium, and extensive property damage.

¶4.     The Appellees responded with numerous defenses, including an averment that, as governmental entities, they were immune from liability because the maintenance of highways

---

However, after the accident, it was noted that the bent plates appeared to be in a "cross" pattern, rather than straight across. He also testified that it appeared that width-wise, the bottom plate was smaller in size.

McMinn's task was to make sure the plates are secure by hitting the plates with a hammer; however, he was unable to check the plates prior to the accident in this instance, as he was working at a different site.

[2] The Logans' family physician stated that Beverly had burns on her face from the airbag deployment and severe bruising in her sternum from her seatbelt restraint. She also had a preexisting diagnosis of anxiety and depression made worse by the accident, causing her nightmares; so the physician prescribed an anti-depressant. Terry was apparently walking around after the accident and not severely injured; however, he was also treated for depression.

is a "discretionary function" under Mississippi Code Annotated section 11-46-9(1)(d) (Rev. 2012) of the Mississippi Tort Claims Act (MTCA), which provides immunity from claims "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]"

¶5.     The Appellees subsequently filed a motion for summary judgment on August 21, 2012, on the basis that they were immune from liability because bridge maintenance and repair is a "discretionary act." They further asserted there was no evidence of "why the steel plate was bent upward" and that they had no notice of the "dangerous" condition. The Logans responded, arguing that the MDOT was not immune under 11-46-9(1)(d) and additionally asserting that the Appellees had knowledge of the dangerous condition and their failure to warn deprived them of immunity under Mississippi Code Annotated section 11-46-9(1)(v) (Rev. 2012), which provides immunity from any claim:

> Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care[.]

¶6.     The circuit court granted the Appellees' summary-judgment motion, finding that the maintenance of the bridge is a discretionary function under section 11-46-9(1)(d); therefore, the Appellees were "completely immune from liability." Addressing the failure-to-warn claim, the circuit court's order simply concluded that even if the bridge repair "presented a

4

dangerous condition, known by these defendants, against which they did not warn the public, nevertheless they are completely immune by virtue of Mississippi Code Annotated [section] 11-46-9(1)(d)." The Logans filed a motion to reconsider the judgment, which the circuit court denied, and they now appeal.

¶7. We reverse the circuit court's finding that the Appellees were immune from liability for the bridge maintenance and remand for a determination of whether the repair of the bridge was performed in a negligent manner, and caused or contributed to the accident injuring the Logans. However, as to the Logans' separate claim regarding the failure to warn, we find that summary judgment is appropriate, as there is no genuine issue of material fact that the Appellees had notice of the "dangerous condition."

## STANDARD OF REVIEW

¶8. A circuit court's decision to grant summary judgment is reviewed de novo. *Davis v. Office Max*, 131 So. 3d 588, 590 (¶6) (Miss. Ct. App. 2013) (citing *Busby v. Mazzeo,* 929 So. 2d 369, 372 (¶8) (Miss. Ct. App. 2006)). "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ladner v. Holleman*, 90 So. 3d 655, 657 (¶7) (Miss. Ct. App. 2012) (quoting M.R.C.P. 56(c)). Viewing the evidence "in the light most favorable to the nonmoving party," we will reverse only if "triable issues of material fact" exist. *Triplett v. River Reg'l Med. Corp.*, 50 So. 3d 1032, 1037 (¶14) (Miss. Ct. App. 2010) (citing *Slatery v. Ne. Miss. Contract Procurement Inc.*, 747 So. 2d 257, 259

5

(¶4) (Miss. 1999)).

## DISCUSSION

¶9.     The Logans asserted two distinct bases for liability in this matter:  (1) the MDOT's bridge maintenance/repair was negligently performed, and (2) the MDOT failed to warn motorists of the negligent bridge repair and the resulting dangerous condition (the bent metal plate).  The Appellees argued in their motion for summary judgment they were immune from liability because the maintenance of highways and bridges is a discretionary act.  The circuit court granted the Appellees' motion, finding that they were entitled to complete immunity under section 11-46-9(1)(d).

### I.     The Duty to Maintain/Repair State Highways and Negligent-Repair Claim

¶10.     Prior to 2012, our appellate courts had consistently found road maintenance to be a discretionary function under the MTCA.  *See Miss. Dep't of Transp. v. Cargile*, 847 So. 2d 258, 269 (¶44) (Miss. 2003) (The "MDOT's duty to regularly inspect and maintain [highways is] discretionary."); *Mohundro v. Alcorn Cnty.*, 675 So. 2d 848, 853 (Miss. 1996) (The county's decision to replace a bridge with a culvert on a county road was a discretionary function to which qualified immunity attached.); *Knight v. Miss. Transp. Comm'n*, 10 So. 3d 962, 970 (¶27) (Miss. Ct. App. 2009) (Because section 65-1-65 "do[es] not impose any specific directives 'as to the time, manner, and conditions for carrying out' the MTC's duty in maintaining highways[,] . . . the above dut[y is] not ministerial."). However, in *Mississippi Transportation Commission v. Montgomery*, 80 So. 3d 789, 798 (¶32) (Miss. 2012), the

6

Mississippi Supreme Court held that the maintenance of state highways is *not* a discretionary function under Mississippi Code Annotated section 65-1-65 (Rev. 2005).[3] "[W]here a statute mandates the government or its employees to act, all acts fulfilling that duty are considered mandated as well, and neither the government nor its employees enjoys immunity." *Montgomery*, 80 So. 3d at 798 (¶31). The *Montgomery* court determined that section 65-1-65 "impose[d] a statutory duty on the highway department to maintain all state highways." *Montgomery*, 80 So. 3d at 798 (¶32).[4]

¶11.    Acknowledging *Montgomery* in his order, the circuit judge determined that an additional statute, Mississippi Code Annotated section 65-1-61 (Rev. 2012),[5] provided the

------------------

[3] Section 65-1-65 provides:

> It shall be the duty of the state highway commission to have the state highway department maintain all highways which have been or which may be hereafter taken over by the state highway department for maintenance in such a way as to afford convenient, comfortable, and economic use thereof by the public at all times. To this end it shall be the duty of the director, subject to the rules, regulations and orders of the commission as spread on its minutes, to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained state highway system, so that said highways may be kept under proper maintenance and repair at all times.

The 2012 version of section 65-1-65 contains no revisions.

[4] The supreme court continued: "Were this the only statutory provision at issue, we would find that the Commission is not immune for the acts carrying out that function." *Id.* (emphasis added). At issue in *Montgomery* was whether the MTC's failure to warn of a dangerous road condition was a discretionary function – an issue we will address in greater detail below.

[5] Section 65-1-61 governs the paving of highways and provides in pertinent part:

7

MDOT with discretion in the performance of the duty to repair the bridge and stated that "it is without dispute that policy considerations were undertaken by the [Appellees] in the performance of this maintenance." During the summary-judgment hearing, it was also noted that this Court had issued a recent opinion, *Little v. Mississippi Department of Transportation*, 129 So. 3d 192, 195 (¶11) (Miss. Ct. App. 2012), in which we observed "that the court in *Montgomery* did not expressly overrule its prior decisions holding that road maintenance and repair are discretionary functions" and concluded "that our supreme court did not intend to change existing law regarding its earlier holdings that road maintenance and repair are discretionary functions."

¶12. However, after the circuit court's order, the Mississippi Supreme Court overturned our decision in *Little*, and addressed *Montgomery*'s deviation from the "bright-line rule that

It shall be the duty of the [MTC] to have the [MDOT] construct, reconstruct and maintain, at the cost and expense of the state, all highways under its jurisdiction up to such standards and specifications and with such surfacing material as the Transportation Commission may determine, such paving to be done for each project as rapidly as funds are made available therefor and, as nearly as practicable, immediately upon the completion of all work performed pursuant to grade, drainage and bridge contracts for the project. Such paving shall be done in the order of the relative use and importance of said highways, as may be determined by the present and future traffic censuses thereof and other criteria, taking into consideration their present and future use, convenience, public necessity, public safety, the recorded maintenance expense, and their availability as highways through the state. The type of the paving and surfacing of such highways shall be determined by the executive director, subject to the rules, regulations and orders of the commission as spread on its minutes, after a complete study of the traffic requirements based upon the present and future traffic censuses, taking into consideration the factors above set forth.

road maintenance and repair [are] discretionary,"[6] stating:

> Because [s]ection 65-1-65 requires the [MDOT] to maintain and repair state highways, that duty – and all acts in furtherance of that duty – are ministerial unless, as in *Montgomery,* another statute makes a particular act discretionary. . . .*The* [*MDOT*] *is not entitled to discretionary-function immunity for failure to properly maintain and repair highways because that function is ministerial.*

*Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 138 (¶¶10-11) (Miss. 2014) (emphasis added). The supreme court further determined:

> The Court of Appeals was correct that *Montgomery* indicated a change in the law, and such was the Court's intention. However, because we did not overrule prior, contrary cases in *Montgomery*, confusion on the part of the lower courts is understandable. To the extent that *Montgomery* failed to overrule conflicting cases, we do so today.

*Id*. at 137 (¶9).

¶13. Among the cases overruled was *Knight*, one of this Court's cases relied on by the circuit court in the present case and which held that section 65-1-61 provided MTC employees discretion in the performance of their duty to maintain highways. However, as established by the supreme court in *Montgomery* and *Little*, road maintenance is a ministerial function and does not provide the Appellees governmental immunity under section 11-46-9(1)(d).

¶14. Furthermore, the Appellees' motion for summary judgment failed to assert they were entitled to a judgment as a matter of law for the claim of negligent repair, merely relying on a finding of governmental immunity under section 11-46-9(1)(d). The Logans argued:

---

[6] *See Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 140 (¶18) (Miss. 2014) (Waller, C.J., dissenting).

There is no direct evidence in the record that the metal plates on the Tallahatchie County bridge were installed flat one on top of the other. The only evidence in the record [is] the photographs after the accident[,] which show the plates in a cross shape. MDOT has not provided direct evidence that the plates were installed in their original state transverse to the direction of travel.

We agree. The MDOT bridge supervisor, Charles McMinn, testified that he was responsible for checking to see if the bridge repair is done correctly, but he also acknowledged that he was not present when the plates were installed on March 10. Nor did he inspect the repair prior to the accident that occurred two days later.[7] Therefore, McMinn admitted that he could only assume that the plates were secured correctly. The only evidence that the bridge repair had been correctly performed was contained in the affidavit of Mitch Turner, a district engineer for MDOT, who averred in a conclusory fashion, "This repair was performed properly." However, there is no evidence in the affidavit that Turner inspected the repair. At the September 13, 2012 hearing on the motion for summary judgment, the circuit court noted that there was no doubt that the plates sticking up from the road constituted a "dangerous condition" and acknowledged that "whether MDOT caused that dangerous condition is the question of fact."

¶15. Accordingly, since the Appellees are not entitled to immunity for road maintenance and failed to prove that they are entitled to a judgment as a matter of law for the claim of negligent repair of the bridge, we reverse the circuit court's grant of summary judgment in

---

[7] McMinn stated that he anticipated going to bridge to inspect the repair that following Monday, March 14.

part and remand for further proceedings on this issue.

## II. Failure to Warn

¶16. The Logans' second claim was that the Appellees were liable for the failure to warn motorists of the dangerous condition caused by the bridge repair and the metal plate protruding up from the road. As already noted, the Logans asserted that section 11-46-9(1)(v) of the MTCA did not afford the Appellees immunity for the failure to warn. The circuit court briefly addressed this issue, reasoning that even if the Appellees had knowledge of the condition and failed to warn, "they are completely immune by virtue of Mississippi Code Annotated [section] 11-46-9(1)(d)." As we have already determined, however, the Appellees are not immune under subsection (d) for the negligent-repair claim.

¶17. In *MacDonald v. Mississippi Department of Transportation,* 955 So. 2d 355, 361 (¶25) (Miss. Ct. App. 2006), this Court held:

> It is true that, for any individual claim, where any one provision under section 11-46-9(1) grants immunity, a governmental entity is *immune to that individual claim*. However, where there are separate claims, that single provision may or may not be sufficient to create immunity as it applies to those other claims. Resolution of the question as to whether a single finding of immunity equates to immunity as to each and every claim raised depends on the facts of the case and the relevant claims.

(Emphasis added). Subsequently, in *Little*, the supreme court acknowledged that "Section 11-46-9(1) is not written in the disjunctive and immunity under only one subsection does not actually render the government actor immune from liability." *Little*, 129 So. 3d at 139 (¶13).

> [E]very subsection is not relevant to every claim. . . . To be clear, we have never held that the applicability of one exemption extinguishes *all claims*. Each separate and distinct claim must meet an exemption under one of the

11

subsections of Section 11-46-9(1) for immunity to apply to that particular claim.

*Id.* at (¶15). Since there are two distinct claims in the present case – negligent repair of the bridge and the failure to warn of the dangerous condition – we must also address whether the Appellees are entitled to immunity for the failure-to-warn claim.

¶18. In *Montgomery*, the central issue addressed was whether the duty to warn individuals of a dangerous highway condition (a pothole) was a discretionary act that afforded the MTC immunity from liability under section 11-46-9(1)(d). As discussed, the supreme court found road maintenance, by itself, is a ministerial function directed by statute. *Montgomery*, 80 So. 3d at 798 (¶32). But the *Montgomery* court further concluded that another statute, Mississippi Code Annotated section 63-3-305 (Rev. 2004), provides the MTC with discretion in the placement of warning signs, stating:

> Section 63-3-305 gives local authorities discretion in placing and maintaining traffic devices "as they may deem necessary to indicate and carry out the provisions of this chapter." Although the [MTC's] duty to maintain highways is not discretionary, the placing of warning signs is, because the Legislature has provided specific language in the statute extending discretion to those acts. Otherwise, the [MTC] would not enjoy immunity.
>
> Further, this Court and the Court of Appeals previously have held that, under Section 63-3-305, the placement or nonplacement of traffic-control devices to warn of dangerous conditions involves choice and judgment and is not ministerial. Because the Legislature extended discretion to whether and how to warn traffic, we find that the Commission's decision was not ministerial.

*Montgomery*, 80 So. 3d at 798-99 (¶¶32-33) (internal citations omitted). However,

observing that the circuit court had failed to apply the two-part public-policy-function test,[8] the *Montgomery* court reversed the denial of the MTC's motion for summary judgment and remanded for consideration of whether the "duty to warn of a dangerous pothole on a highway" was a discretionary act that afforded the MTC immunity. *Id*. at 800 (¶42). Further, although the plaintiff in *Montgomery*, as here, relied solely on section 11-46-9(1)(v) as the basis to deny immunity, the supreme court determined that it "need not reach [Sylvia] Montgomery's argument under [s]ection 11-46-9(1)(v)" if it found the alleged act was discretionary under subsection (d). *Montgomery*, 80 So. 3d at 797 (¶27).

¶19. Upon review, however, we find that the Logans have failed to show there is a genuine issue of material fact as to the Appellees' notice of the dangerous condition. Although the Logans claim the Appellees "knew of the dangerous condition," we agree with the circuit court that there was no evidence to support this assertion. The Logans did submit an affidavit by Mauri Logan, who testified:

> I saw two employees of [MDOT] at the scene. I spoke with one of those gentlemen[.] . . . . He told me that MDOT had received a phone call earlier in the day of March 12, 2011[,] regarding the dangerous metal plates sticking up on the bridge.
>
> . . . .

---

[8] This two-part public-policy-function test used to determine whether an act is discretionary and, thus, affords a governmental entity immunity requires ascertaining "whether the activity in question involve[s] an element of choice or judgment . . . .[and] whether that choice or judgment involve[s] social, economic, or political-policy considerations." *Montgomery*, 80 So. 3d at 795 (¶20) (citing *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999) (overruled on other grounds)).

The second employee from MDOT confirmed that MDOT received a telephone call early in the day regarding the dangerous metal plates on the highway.

But Turner, the district engineer for MDOT, averred in his affidavit: "Neither MDOT nor the [MTC] received any report from any source that there was any dangerous condition existing on this bridge at any time prior to the accident involving the [Logans] on March 12, 2011." We find both affidavits contain hearsay as neither Mauri, nor Turner, had personal knowledge of whether the Appellees were notified of the dangerous condition. *See Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 91 (¶22) (Miss. 2013) (An affidavit not based upon the affiant's personal knowledge of whether the defendants had actual knowledge of the dangerous condition, a liquid spill on the floor, was hearsay and would not be admissible in evidence at trial.) The Logans argue that the MDOT workers' statements were admissions by a party opponent under Mississippi Rule of Evidence 801(d)(2), which provides in part that a statement is not hearsay if "[t]he statement is offered against a party and is . . . (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" However, there is nothing to demonstrate that the workers, who allegedly spoke to Mauri, were authorized to make the statement concerning a matter within the scope of their employment with MDOT. Their statements "are not alone sufficient to establish [their] authority under subdivision (C), [or] the agency or employment relationship and scope thereof under subdivision (D)[.]" *See* M.R.E. 801(d)(2). Thus, this evidence would not be admissible at trial, and there is nothing

14

to show that the Appellees had notice of the condition, triggering a duty to warn.

¶20. The supreme court, in *Little*, has expressly rejected a plaintiff's attempt to have the specific immunity exceptions "enforced as an affirmative duty to warn, rather than as a provision for immunity against claims for failure to warn," noting that "[t]he provisions in Section 11-46-9(1) are shields, not swords." *Little*, 129 So. 3d at 139 (¶14). "A duty must arise from another statute first before we look to Section 11-46-9(1) to determine if an exemption applies. The exemptions do not impose duties and cannot be used as affirmative sources of liability." *Id*.

¶21. Consequently, we find a detailed discussion concerning the Appellees immunity under either subsection (d) or (v) is unnecessary since there is no triable issue of fact presented as to whether the Appellees had notice of the "dangerous condition," and there is nothing to support the Logans' claim on the failure to warn. *See Clein v. Rankin Cnty. School Dist.* 78 So. 3d 384, 390 (¶20) (Miss. Ct. App. 2012) (finding summary judgment appropriate where the plaintiff failed to provide proof that the school district and school employee "possessed actual or constructive notice" of an alleged dangerous condition); *Hankins v. City of Cleveland*, 90 So. 3d 88, 96 (¶17) (Miss. Ct. App. 2011) (reasoning that circuit court correctly granted immunity because the plaintiff failed to present any evidence that the governmental entities "had any notice of any claimed defect or had the opportunity to protect or warn of the defect") Accordingly, we conclude the Appellees are entitled to summary judgment as a matter of law for this claim.

¶22. **THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE**

15

**COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE AND CARLTON, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY ROBERTS AND FAIR, JJ.; JAMES J., JOINS IN PART. FAIR AND JAMES, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**MAXWELL, J., CONCURRING IN PART AND IN THE RESULT:**

¶23. I fully agree with the majority that, based on *Little v. Mississippi Department of Transportation*, 129 So. 3d 132, 138 (¶¶10-11) (Miss. 2013), MDOT and MTC were not immunized by section 11-49-9(1)(d) from liability for the Logans' claims of negligent maintenance and negligent creation of a dangerous condition. So I concur with the portion of the opinion that reverses the grant of summary judgment on those claims.

¶24. I also concur with the result the majority reached on the failure-to-warn claim—but for a different reason. I disagree with the majority's justification for affirmance—lack of evidence. The statements by MDOT workers repeated in Mauri Logan's affidavit were admissible as admissions by a party opponent. *See* M.R.E. 801(d)(2)(D). And these admissions were sufficient to create a disputed factual question whether MDOT knew about the dangerous condition on the bridge.

¶25. Still, I am hesitant to reverse the grant of summary judgment on this claim, given how the supreme court has distinguished a failure-to-warn claim against MDOT and MTC from a negligent-maintenance claim against these government entities. In the same opinion where the court took away discretionary-function immunity for negligent-maintenance claims, the

16

court kept alive the availability of discretionary-function immunity for failure-to-warn claims. *Mississippi Transportation Commission v. Montgomery*, 80 So. 3d 789, 798 (¶32) (Miss. 2012). So with this type of claim left undisturbed by *Montgomery* and *Little*'s sweeping changes, I would find, like the trial court, that MDOT and MTC enjoyed discretionary-function immunity for this claim.

### Mississippi Rule of Evidence 804(d)(2)(D)

¶26. The majority finds there is no evidence MDOT knew of the dangerous condition posed by the bent metal plate. In reaching this conclusion, the majority rejects Mauri Logan's affidavit for containing inadmissible hearsay. But under Mississippi Rule of Evidence 801(d)(2)(D), "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." And here, via Mauri's affidavit, the Logans offered statements made by MDOT employees that were within the scope of their employment—road maintenance.

¶27. The majority concludes these statements do not meet the criteria of Rule 801(d)(2)(D). It deems the statements inadmissible based on the rule's qualification that "[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof under subdivision (D)." But what the majority overlooks is that the affidavit does not merely offer the *contents* of these statements but also their *context*.

¶28. In her affidavit, Mauri does not surmise the speakers must have been MDOT

17

employees based on what they told her. Instead, Mauri attests that she "saw" and "spoke" with two MDOT employees. As she specifically put it, she "saw two employees of Mississippi Department of Trasnportation at the scene." And she "spoke with one of those gentlemen who was a slightly heaveyset African-American." This MDOT employee "told [her] that MDOT had received a phone call earlier in the day of March 12, 2011, regarding the dangerous metal plates sticking up on the bridge." Her affidavit also described her conversation with a "second employee from MDOT" who "confirmed that MDOT had received a telephone call earlier in the day regarding the dangerous metal plates on the highway."

¶29.    Further, though the affidavit does not describe the scope of their employment, it is certainly reasonable to conclude they were there because of the condition of the bridge work. In fact, when addressing Mauri's affidavit, the circuit judge went so far as to "take judicial notice" that the only reason MDOT employees would be at the bridge that Saturday afternoon—a day the record clearly showed no MDOT employee was scheduled to work—was "because of a complaint or warning that there was a problem with the bridge."

¶30.    To me, the majority's actual concern is that Mauri's affidavit testimony is unverified. But any skepticism over whether Mauri really did talk with MDOT employees goes to the weight and credibility of her testimony—issues simply not on the table at the summary-judgment stage. For purposes of summary judgment, this court, like the trial court, is to view the evidence in the light most favorable to the Logans, the nonmovants. *See Leslie v. City of Biloxi*, 758 So. 2d 430, 431-32 (¶5) (Miss. 2002) (citations omitted).

18

¶31. My concern is that the majority, by declaring the affidavit inadmissible, is reading Rule 801(d)(2)(D) too narrowly. And by doing so, the majority constricts the discretion given to trial judges when making evidentiary rulings. The judge in this case decided the affidavit was admissible for purposes of summary judgment. MDOT had asked the judge to strike Mauri's affidavit, arguing it contained inadmissible hearsay. But the judge declined this request and instead considered the affidavit as part of the Logans' evidence. Like any other evidentiary matter, this decision is left to the judge's discretion. *Indem. Ins. Co. of N. Am. v. Guidant Ins.*, 99 So. 3d 142, 155 (¶36) (Miss. 2012) (reviewing evidentiary decision made at summary-judgment stage for abuse of discretion). And here, based on Rule 801(d)(2)(D), I see no abuse of discretion for allowing Mauri's affidavit to stand as support for the Logan's defense against summary judgment.

¶32. Because we must view this evidence in the light most favorable to the Logans as the nonmovants, I find the Logans sufficiently supported their failure-to-warn claim for purposes of defeating summary judgment.

### *Discretionary-Function Immunity*

¶33. I still join the result reached by the majority based on *Little*'s precursor, *Montgomery*, which distinguished the discretionary duty of placing warning signs from the nondiscretionary duty of maintaining highways. *Montgomery*, 80 So. 3d at 798-99 (¶¶31-33).

¶34. As the majority has pointed out, *Little* confirmed that "*Montgomery* indicated a change in the law"—namely, that the duty to maintain and repair state highways is not a

19

discretionary function. *Little*, 129 So. 3d at 137-38 (¶¶9-11). *Little* further proclaimed that "all acts in furtherance of that duty . . . are ministerial **unless**, as in *Montgomery*, another statute makes a particular act discretionary." *Little*, 129 So. 3d at 138 (¶11) (emphasis added). In *Montgomery*, the supreme court determined that the duty to place warning signs had been specifically "carved out" by the Legislature from the mandatory function to maintain highways. *Montgomery*, 80 So. 3d at 798 (¶32). Thus, while the "duty to maintain highways is not discretionary, the placing of warning signs is[.]" *Id.*

¶35. I have my misgivings whether the statute *Montgomery* relied upon actually represents a legislative decision to make the decision to warn about a dangerous road condition discretionary—especially where, as in this case, MDOT allegedly created the dangerous condition in the first place. *See id*. (applying Mississippi Code Annotated Section 63-3-305 (Rev. 2004), which "gives **local authorities** discretion in placing and maintaining **traffic devices**" (emphasis added)). But I do not see how this court can get around *Montgomery*'s declaration that MTC's failure to warn about a known giant pothole was the product of legislatively conferred discretion.

¶36. As the the Logans' failure-to-warn claim is based on allegations similar to those in *Montgomery*, I would affirm the grant of summary judgment based on discretionary-function immunity.

**ROBERTS AND FAIR, JJ., JOIN THIS OPINION. JAMES, J., JOINS THIS OPINION IN PART.**